[No. B002612. Second Dist., Div. Three. Aug. 30, 1984.]

RICARDO ROSE, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents;
STATE COMPENSATION INSURANCE FUND,
Intervener and Appellant.

## COUNSEL

Bernard L. Nizinski for Plaintiff and Appellant.

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Jeffrey A. Rosen for Intervener and Appellant.

Ira Reiner, City Attorney, John T. Neville and Richard M. Helgeson, Assistant City Attorneys, Katherine J. Hamilton, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**ARABIAN, J.**—Plaintiff-appellant Ricardo Rose and intervener-appellant State Compensation Insurance Fund[1] (appellants) appeal from a summary judgment (Code Civ. Proc., § 437c) in favor of defendants-respondents City of Los Angeles, Daryl F. Gates and Victor L. Carranza (respondents). The summary judgment was granted by the trial court on the sole basis that Rose's personal injury action was barred by the "fireman's rule." We reverse.

### FACTS

The facts below are derived from the deposition testimony of appellant Rose (Rose) which was included in respondents' moving papers.

---

[1]The State Compensation Insurance Fund intervened in this matter in order to recover the cost of workers' compensation benefits paid to Rose.

Rose was a reserve police officer with the San Fernando Police Department. He was shot by respondent Carranza (Carranza), an officer with the Los Angeles Police Department. The shooting took place during a joint operation by the San Fernando and Los Angeles Police Departments attempting to serve two search warrants on a suspected narcotics dealer.

Rose's supervisor had explained the operation to Rose and two other San Fernando police officers at the San Fernando police station. Thereafter, the officers drove to a Los Angeles Police Department substation where they met Carranza and the six Los Angeles police officers involved in the assignment.

The officers from the two police departments were together for approximately two and one-half hours discussing strategy and receiving their assignments. Three 2-man vehicles were assigned to a Baldwin Park location. Rose and his partner, who both were in plain clothes, were instructed to drive their unmarked vehicle to a freeway on-ramp in the Baldwin Park area. Carranza and his partner were assigned to follow the suspect in their unmarked unit.

Fifteen or twenty minutes after Rose and his partner arrived at their position on the freeway, they received a radio call that Carranza and his partner had lost the suspect. Thereafter, Rose's unit and Carranza's unit were instructed to drive to the suspect's apartment in Los Angeles, to wait there until the suspect arrived, and to arrest him before he could get into his apartment. The other three vehicles were instructed to remain at the Baldwin Park location.

Before proceeding to the suspect's home, Rose and his partner and Carranza and his partner met at a point near the freeway, parked their vehicles, and talked about the stake-out. Carranza described the suspect's apartment as a brick building one block away. Rose's unit drove to that location and parked a block east of the apartment. Rose saw Carranza's unit drive to a point one block west of the suspect's apartment and park.

Two or three minutes after their units had parked, the suspect's vehicle appeared. Rose knew it was the suspect because the officers had been given a description of him and his automobile when they were at the Los Angeles police station. They had also received a description of the suspect over the radio. When Rose observed the vehicle, he asked Carranza's unit over the radio if it was the suspect's car. Carranza or his partner said, " 'That's him,' " and then said, " 'Take him down.' "

It was broad daylight. The suspect drove past Rose's parked vehicle and stopped in front of the apartment building. Rose exited his vehicle with his

gun drawn. He approached the suspect's car on the passenger side and looked through the window. From that position Rose could see Carranza's unit driving toward them. Rose saw Carranza park, open his car door, exit his vehicle, and run toward him. As he ran, Carranza took out his gun and, when he was within 12 to 15 feet of Rose, Carranza pointed his gun at Rose and shot him 3 or 4 times in the legs. Rose was holding his badge in front of him and was yelling, "'I'm a cop. I'm a cop.'"

## CONTENTIONS

Appellants contend the summary judgment—which was granted on the sole basis the fireman's rule bars Rose's personal injury action—was improper and must be reversed for the following reasons:

1. The fireman's rule is not applicable to the facts of this case as a matter of law.

2. The applicability of the fireman's rule depends on a factual determination whether Rose's injuries were caused by an act which was separate and independent of the reason for Rose's presence at the accident scene.

3. The statutes which abolished the fireman's rule (Civ. Code, § 1714.9, Lab. Code, § 3852) are retroactive to the date on which Rose was injured.

4. Respondents were barred from asserting the fireman's rule in their motion for summary judgment because they failed to raise the rule as an affirmative defense in their answer.

## DISCUSSION

■ We agree with Rose's contention that the summary judgment, based on the theory the fireman's rule bars his action for personal injuries, was improperly granted. As a matter of law, the fireman's rule is not applicable to the facts of this case.

California adopted the fireman's rule in *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355 [72 Cal.Rptr. 119], holding that "a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured." (*Id.* at p. 360.)

In *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190 [91 Cal.Rptr. 232], application of the fireman's rule was extended to bar an action by a fireman against a person whose active negligence caused the fire in which the fireman was injured. The Court of Appeal restated the rule

thusly: "[W]here the defendant's negligence, whether active or passive, creates an apparent risk, which is of the type usually dealt with by firemen, *and which is the cause of the firemen's presence,* and which is the direct cause of the fireman's injury, the defendant is not liable to the fireman." (*Id.,* at p. 1199, italics added.)

The California Supreme Court endorsed the fireman's rule in *Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609], and held the rule applied to policemen as well as firemen. (*Id.,* at p. 202; see *Giorgi* v. *Pacific Gas & Elec. Co., supra,* at p. 357.)

Further, in *Walters,* the court made it clear that the rule precludes recovery only where the negligence alleged—in that case furnishing liquor to minors who became drunk—was the same negligence which resulted in summoning the police. (See 20 Cal.3d at pp. 202, fn. 2, 207; and see Witkin, Summary of Cal. Law (8th ed., 1982 supp. to vol. 4) Torts, § 491A, p. 247.)

And in *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480, 486 [169 Cal.Rptr. 706, 620 P.2d 156], the Supreme Court confirmed the validity of the principle that the fireman's rule was not intended to bar recovery for independent acts of misconduct not the cause of an injured plaintiff's presence at the accident scene, quoting from *Walters*: "'Thus a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain [an] action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking.' (20 Cal.3d at p. 202, fn. 2.)"

The Supreme Court most recently clarified the limited scope of the fireman's rule in *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362 [182 Cal.Rptr. 629, 644 P.2d 822]. After reviewing *Giorgi, Scott, Walters* and *Hubbard,* the court stated: "It is, thus, unmistakably clear that in California, the fireman's rule has never been construed as shielding a defendant from liability for acts of misconduct which are independent from those which necessitated the summoning of the fireman. [Citations.] The rule has *only* been applied to prohibit a fireman from recovering for injuries caused by the very misconduct which created the risk which necessitated his presence." (*Id.,* at p. 369, original italics.) The court noted that its review of the California court decisions which have applied the fireman's rule revealed no exceptions to this statement. (*Id.,* at p. 369, fn. 4.)

The *Lipson* court (31 Cal.3d at pp. 369-370) cited with approval *Malo* v. *Willis* (1981) 126 Cal.App.3d 543 [178 Cal.Rptr. 774], in which the Court of Appeal held that the fireman's rule did not apply. In *Malo,* a California Highway Patrol officer ordered the defendant and another speeding motorist

to pull their automobiles to the side of the road. The officer then parked his vehicle between the two detained cars. Thereafter, defendant stepped on the clutch pedal instead of the brake and his car struck the officer's vehicle from the rear. In holding the fireman's rule did not bar the officer's action, the court reasoned that the officer's injury was caused by the defendant's unfamiliarity with driving a car with a manual transmission, a risk which was neither one normally associated with apprehending speeding motorists nor "a reason for [the officer's] presence at the accident scene." (*Id.*, at p. 548.)

Another case on point is *Krueger* v. *City of Anaheim* (1982) 130 Cal.App.3d 166 [181 Cal.Rptr. 631], in which the Court of Appeal held the fireman's rule did not bar the action of a baseball stadium security guard who was injured while attempting to eject a spectator for disorderly conduct. The court relied on the distinction between "the kind of conduct which brings the fireman or policeman to the scene in the first instance and the injury suffered by the officer from independent causes which may follow." (*Id.*, at p. 170.) The court explained: "An assault of this nature is a separate and different criminal act arising after the offense which occasions the officer's presence, the disorderly conduct of running across the playing field and scaling fences during the course of a sports event (see, e.g., Pen. Code, §§ 241, 243, 245). It cannot be said such intentional conduct created the occasion for the officer's engagement [citation]." (*Id.*, at pp. 170-171, fn. omitted.)

The case which most closely resembles the instant action is *Shaw* v. *Plunkett* (1982) 135 Cal.App.3d 756 [185 Cal.Rptr. 571]. In *Shaw*, a police officer was in the process of arresting a prostitute in a motel parking lot when he was struck and injured by an automobile driven by the prostitute's customer. The Court of Appeal refused to apply the fireman's rule in the officer's suit against the customer because "the police officer's injuries were not proximately caused by conduct which necessitated his presence in the parking lot of the motel." (*Id.*, at p. 760.)

Respondents recite and acknowledge the holdings and rationales of the foregoing cases, but nonetheless argue that the fireman's rule bars the present action because the risk of being shot while attempting to serve a search warrant and attempting to arrest a potentially dangerous narcotics suspect was one that Rose should have anticipated and one that he assumed voluntarily. In support of respondents' argument they cite *Lenthall* v. *Maxwell* (1982) 138 Cal.App.3d 716 [188 Cal.Rptr. 260, 30 A.L.R.4th 73], a case in which a police officer brought a personal injury action against a man who shot and injured him when he responded to an order to proceed to the man's home to subdue a violent offense involving firearms. The *Lenthall* court

held the fireman's rule applied because in those circumstances "a police officer . . . should reasonably anticipate that one of the persons whom he was called on to subdue might resist him by the use of the firearms involved." (*Id.*, at p. 719.)

The defect in respondents' argument is that they fail to acknowledge the critical distinction between this case and *Lenthall.* Here, Carranza's act was completely independent of the conduct which was the reason for Rose's presence on the accident scene: the illegal conduct of the narcotics suspect, not Carranza's act, brought Rose to the street in front of the suspect's apartment. In contrast, in *Lenthall,* the person the officer was called to subdue was the very same person who shot him.

A quotation from *Spargur* v. *Park* (1982) 128 Cal.App.3d 469 [180 Cal.Rptr. 257] is apt: "The liability of the third person who does not create the original hazard or who does not cause the officer to be present or called to the scene but whose independent tort act injures has not been judicially eliminated by the fireman's rule. To the contrary, the third person has in fact been held to still be liable." (*Id.*, at pp. 474-475.)

We conclude that the fireman's rule does not apply to the facts of this case *as a matter of law* because the undisputed evidence shows Rose's injury was caused by Carranza's separate and independent act which was not "the original circumstance to which the police officer [was] called." (*Spargur, supra,* 128 Cal.App.3d at p. 475.) This was a situation " 'in which the defendant's negligence occurred after the [officer] arrived on the scene and materially enhanced the risk of harm or created a new risk of harm.' [Citation.]" (*Ibid.*)

Since respondents failed to carry their burden of establishing a complete defense under the fireman's rule, the grant of their summary judgment motion based on that rule was improper and must be reversed. That being so, we need not address appellant's other contentions on appeal.

DISPOSITION

The summary judgment in favor of respondents is reversed.

Klein, P. J., and Lui, J., concurred.