[No. S062627. Aug. 6, 1998.]

EDUARDO CALATAYUD III et al., Plaintiffs and Respondents, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Margaret A. Rodda, Assistant Attorney General, Richard J. Rojo, Barbara A. Noble and Raymond L. Fitzgerald, Deputy Attorneys General, for Defendants and Appellants.

Solomon, Saltsman & Jamieson, Robert B. Saltsman, Stephen Allen Jamieson and Stephen Warren Solomon for Plaintiffs and Respondents.

## OPINION

BROWN, J.—Under the common law doctrine known as the firefighter's rule, the public's liability is limited. One who negligently causes the event to which a police officer responds owes no duty of care with respect to the initial negligent act. (*Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609].) Thus, the officer may not sue for injury proximately caused by that original negligence. By statute, however, this limitation on liability does not extend "[w]here the conduct causing the injury occurs after the person knows or should have known of the presence of" the officer.[1] (Civ. Code, § 1714.9, subd. (a)(1).)

This case involves injury to a police officer caused by a fellow officer while the two were attempting to subdue and arrest a criminal suspect. The

---

[1] The firefighter's rule extends to police officers as well as firefighters. Civil Code section 1714.9 applies to "peace officer[s], firefighter[s], [and] emergency medical personnel." For the sake of simplicity, we may at times refer to them all generically as "public safety members"; however, the discussion should be understood to apply to all categories of

officers were employed by different public safety agencies. The question we must resolve is whether the firefighter's rule or the statutory exception should govern the negligent officer's, and his employer's, liability.[2] We conclude the Legislature did not intend Civil Code section 1714.9, subdivision (a)(1), to apply in these circumstances and therefore reverse the contrary determination of the Court of Appeal.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of February 9, 1990, California Highway Patrol Officer Michael Byrd and his partner received a report of shots fired in a nearby parking structure. When they arrived at the location, they observed a highly agitated Jimmy Ray Wilkes, a professional football lineman, causing a disturbance. The two officers went to detain Wilkes and keep him out of the parking structure. Highway Patrol Officer Charles DeVille joined the effort. Both Byrd and DeVille carried shotguns. Plaintiff Eduardo Calatayud III (plaintiff), a Pasadena police officer, had received an "officer needs assistance" call and proceeded to the scene. He observed Byrd and DeVille, both still holding their shotguns, attempting to control and detain Wilkes, who appeared to be violently resisting them.

Plaintiff approached the highway patrol officers to assist them in subduing and arresting Wilkes. As plaintiff placed a partial control hold on Wilkes's right hand, Byrd pushed Wilkes's body down to keep him from standing up. In the process Byrd fell, accidentally causing his shotgun to discharge and injure plaintiff.

Plaintiff brought suit against defendants the State of California and Officer Byrd (defendants).[4] Defendants unsuccessfully sought to interpose the firefighter's rule as a bar to liability. Following a three-week trial, a jury returned a verdict in favor of plaintiff in excess of $700,000. It apportioned 50 percent fault to Wilkes, 30 percent to Byrd (and the state for his conduct),

---

individuals covered by either the rule or the statute as the case may be. (See *Seibert Security Services, Inc.* v. *Superior Court* (1993) 18 Cal.App.4th 394, 405, fn. 6 [22 Cal.Rptr.2d 514].) We may also refer to their employers generically as "public safety agencies."

[2]Some additional matters of terminology: An "injured officer" is the individual bringing suit against a "negligent officer" who is employed by a different public safety agency. In this context, a "fellow officer" should also be understood to refer to a public safety member employed by a different agency than the injured officer.

[3]In reaching this conclusion, we consider only the circumstances presented on these facts: injury negligently caused by a fellow officer jointly engaged with the injured officer in the discharge of their public safety responsibilities.

[4]Plaintiff's wife, Tammy Lee Calatayud, sued for loss of consortium. Because her claim is derivative of and dependent on her husband's negligence action, and to avoid confusion, we will refer only to Officer Calatayud as plaintiff.

and 20 percent to the state (for DeVille's conduct). The total judgment against defendants amounted to $440,000 plus costs.[5]

The Court of Appeal affirmed the judgment. The court found the firefighter's rule applicable based on "evidence establish[ing] that Officer Calatayud's immediate presence at the scene of the struggle with Mr. Wilkes was necessitated by Mr. Wilkes's resistance, and by the conduct of the [Highway Patrol] officers in attempting to subdue Mr. Wilkes while holding their shotguns." Nevertheless, it determined the circumstances came within the exception set forth in Civil Code section 1714.9, subdivision (a)(1). We granted defendants' petition for review to determine the scope of the statute.

## DISCUSSION

■ Stated in its most traditional terms, the firefighter's rule "is that which negates liability to firemen by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman." (*Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 357 [72 Cal.Rptr. 119].) Although the doctrine first gained currency in American common law more than a century ago (see, e.g., *Gibson* v. *Leonard* (1892) 143 Ill. 182 [32 N.E. 182], overruled on other grounds in *Dini* v. *Naiditch* (1960) 20 Ill.2d 406 [170 N.E.2d 881, 886, 86 A.L.R.2d 1184]), it was not adopted in California until 1968. (*Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d 355.) Subsequently, in *Walters* v. *Sloan, supra,* 20 Cal.3d 199 (*Walters*), this court not only gave its imprimatur but extended the rule to police officers. (*Id.* at p. 202.)

The undergirding legal principle of the rule is assumption of the risk, i.e., the "legal conclusion that the person who starts a fire owes no duty of care to the firefighter who is called to respond to the fire. [Citations.]" (*Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 541 [34 Cal.Rptr.2d 630, 882 P.2d 347] (*Neighbarger*); *Knight* v. *Jewett* (1992) 3 Cal.4th 296, 309-310, fn. 5 [11 Cal.Rptr.2d 2, 834 P.2d 696]; see *Walters, supra,* 20 Cal.3d at p. 204.) " 'In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid.' " (*Walters, supra,* 20 Cal.3d at p. 205, quoting *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, 131].)[6]

The rule is equally grounded in considerations of public policy " 'distilled from the relevant factors involved upon an inquiry into what is fair and

---

[5]Plaintiff had previously settled with Wilkes for $60,000.

[6]The traditional formulation of the firefighter's rule often provides a less than perfect fit with typical police functions (see Comment, *Where There's Smoke, There's the Firefighter's Rule: Containing the Conflagration After One Hundred Years,* 1992 Wis. L.Rev. 2031, 2044-2047), and the courts often struggle with the translation. (See, e.g., *Seibert Security Services, Inc.* v. *Superior Court, supra,* 18 Cal.App.4th at p. 411; *Rose* v. *City of Los Angeles*

just. . . . [¶] [I]t is the fireman's business to deal with that very hazard [the fire] and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement.'" (*Walters, supra,* 20 Cal.3d at p. 205; *Neighbarger, supra,* 8 Cal.4th at p. 539.) Moreover, "public safety employees receive special public compensation for confronting the dangers posed by the defendants' negligence." (*Neighbarger, supra,* 8 Cal.4th at p. 540.) "Firemen and policemen are paid for the work they perform including preparation for facing the hazards of their professions and dealing with perils when they arise. When injury occurs, liberal compensation is provided. In addition to the usual medical and disability benefits ordinarily provided all employees covered by the Workers' Compensation Act, firemen and policemen are provided special benefits [including special statutory presumptions of industrial causation, special death benefits, optional paid leaves of absence, and fully paid disability benefits despite retirement]." (*Walters, supra,* 20 Cal.3d at p. 205; *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480, 484 [169 Cal.Rptr. 706, 620 P.2d 156] (*Hubbard*).)

"Thus, the fireman's rule is based upon a public policy decision to meet the public's obligation to its officers collectively through tax-supported compensation rather than through individual tort recoveries. This spreads the costs of injuries to public officers among the whole community, making the public in essence a self-insurer against those wrongs that any of its members may commit." (Comment, *The Fireman's Rule: Defining Its Scope Using the Cost-Spreading Rationale* (1983) 71 Cal.L.Rev. 218, 235-236, fns. omitted (Comment); see *Walters, supra,* 20 Cal.3d at pp. 205-206.) "[T]he public, having secured the services of the firefighter by taxing itself, stands in the shoes of the person who hires a contractor to cure a dangerous condition. In effect, the public has purchased exoneration from the duty of care and should not have to pay twice, through taxation and through individual liability, for that service. [Citations.]" (*Neighbarger, supra,* 8 Cal.4th at pp. 542-543; see *Walters, supra,* 20 Cal.3d at pp. 204-206.) Accordingly, the rule functions as a cost-spreading mechanism "allow[ing] the public to insure against the injuries that its officers will inevitably sustain in the performance of their duties." (Comment, *supra,* at p. 235; see *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d at p. 360.)

Additionally, the firefighter's rule serves the policy of efficient judicial administration by eliminating claims that would simply "burden our courts

(1984) 159 Cal.App.3d 883, 887-889 [206 Cal.Rptr. 49]; *Malo* v. *Willis* (1981) 126 Cal.App.3d 543, 547 [178 Cal.Rptr. 774].) However, "[t]he rule finds its clearest application in situations like that before us—a person who, fully aware of the hazard created by the defendant's negligence, voluntarily confronts the risk for compensation." (*Walters, supra,* 20 Cal.3d at p. 204.)

with litigation among the employer public agency, the retirement system, and the negligence insurer. Whether the employee is ultimately compensated with money derived from taxes or from insurance, the public pays the bill." (*Walters, supra,* 20 Cal.3d at p. 206; *Neighbarger, supra,* 8 Cal.4th at p. 543.) Complex determinations of causation would also present "difficult problems requiring lengthy trials." (*Giorgi v. Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d at p. 360; *Neighbarger, supra,* 8 Cal.4th at p. 543; cf. *Scott v. E.L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190, 1195-1196 [91 Cal.Rptr. 232].)[7]

Like most legal principles, the firefighter's rule is not without its exceptions. "The firefighter does not assume every risk of his or her occupation. [Citation.] The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene. [Citations.]" (*Neighbarger, supra,* 8 Cal.4th at p. 538; see also *Krauth v. Geller, supra,* 157 A.2d at pp. 131-132.) "In *Walters,* the majority [also] recognized that the fireman's rule does not preclude recovery when the defendant has violated a statute and the officer ' "suffering . . . the injury . . . was one of the class of persons for whose protection the statute . . . was adopted." ' (20 Cal.3d at pp. 206-207, quoting Evid. Code, § 669, subd. (a)(4).)" (*Hubbard, supra,* 28 Cal.3d at p. 490 (dis. opn. of Tobriner, J.).)

Until 1982, the firefighter's rule developed as part of the common law. In that year, the Legislature enacted Civil Code section 1714.9, codifying certain exceptions.[8] (Stats. 1982, ch. 258, § 1, p. 836.) Subdivision (a)(1) of Civil Code section 1714.9, at issue here, provides that "[n]otwithstanding statutory or decisional law to the contrary, any person is responsible not only

---

[7]Courts have noted as well that "the freedom from liability provided by the fireman's rule ' "permits individuals who require police or fire department assistance to summon aid without pausing to consider whether they will be held liable for consequences which, in most cases, are beyond their control." ' [Citations.]" (*Seibert Security Services, Inc. v. Superior Court, supra,* 18 Cal.App.4th at p. 406.)

[8]Civil Code section 1714.9 provides in its entirety: "(a) Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity, but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations:

"(1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel.

"(2) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel, violates a statute, ordinance, or regulation, and was the proximate cause of an injury which the statute, ordinance, or regulation was designed to prevent, and the statute, ordinance, or

for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity; but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations: [¶] (1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel."

■ The question on these facts is whether "any person" as used in Civil Code section 1714.9, subdivision (a)(1) includes public safety members employed by a different agency. The Court of Appeal applied this language literally and concluded it does; plaintiff essentially adopts this analysis.[9] Defendants argue the Legislature never intended the provision to apply to other safety personnel; nor did it contemplate the statute would displace the firefighter's rule in those situations. After due consideration of the statutory scheme in light of its legislative history, as well as the policy implications, we find defendants' argument more persuasive.

■ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning

---

regulation was designed to protect the peace officer, firefighter, or emergency medical personnel.

"As used in this subdivision, a statute, ordinance, or regulation prohibiting resistance or requiring a person to comply with an order of a peace officer or firefighter is designed to protect the peace officer, firefighter, or emergency medical personnel.

"(3) Where the conduct causing the injury was intended to injure the peace officer, firefighter, or emergency medical personnel.

"(4) Where the conduct causing the injury is arson as defined in Section 451 of the Penal Code.

"(b) This section does not preclude the reduction of an award of damages because of the comparative fault of the peace officer or firefighter in causing the injury.

"(c) The employer of a firefighter, peace officer or emergency medical personnel may be subrogated to the rights granted by this section to the extent of the worker's compensation benefits, and other liabilities of the employer, including all salary, wage, pension, or other emolument paid to the employee or the employee's dependents.

"(d) The liability imposed by this section shall not apply to an employer of a peace officer, firefighter, or emergency service personnel."

As originally enacted, the statute did not include arson as an exception to the firefighter's rule. (See Stats. 1983, ch. 136, § 1, p. 321.)

[9]Throughout his brief, plaintiff also makes reference to the "independent acts of misconduct" exception, apparently as a separate argument in support of the judgment. We granted review solely to determine the scope of Civil Code section 1714.9, subdivision (a)(1), and consequently do not address any other aspect of the firefighter's rule. (See Cal. Rules of Court, rule 29.2(b); see *ante*, fn. 3.)

if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) To properly apply these principles, we must at the same time remain cognizant of "the object to be achieved and the evil to be prevented by the legislation. [Citations.]" (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873]; *Ex parte Ellis* (1858) 11 Cal. 222, 224-225.)

Civil Code section 1714.9, subdivision (a)(1) (section 1714.9(a)(1)), derives from former subdivision (b) of Labor Code section 3852. (See Stats. 1982, ch. 149, § 1, p. 492, amended by Stats. 1982, ch. 258, § 1, pp. 835-836.) In 1982, the Legislature enacted this latter provision "specifically to reverse the effect of the Hubbard case." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2351 (1981-1982 Reg. Sess.) as amended May 3, 1981, p. 4; see also Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2105 (1981-1982 Reg. Sess.) as amended May 27, 1981, pp. 1-3.) The search for legislative intent thus begins with our decision in *Hubbard*, *supra*, 28 Cal.3d 480, and the Legislature's reaction.

In *Hubbard*, a police officer, using red lights and siren, chased a speeding motorist. Instead of stopping, the motorist accelerated, at one point reaching a speed of 100 miles per hour. While passing another car on a blind curve, he collided with a third vehicle. The officer was injured as he swerved to avoid the debris from the collision. When the officer sued for his injuries, the motorist invoked the firefighter's rule, and the trial court granted summary judgment. (*Hubbard*, *supra*, 28 Cal.3d at pp. 483-484.) This court affirmed, concluding that the rule applied equally "whether defendant's conduct was reckless or merely negligent in nature" (*id.* at p. 484) and that evading arrest statutes (e.g., Pen. Code, § 148 & Veh. Code, § 2800.1) were not "specially designed to protect policemen from traffic accidents of the kind in which plaintiff was injured." (*Hubbard*, *supra*, 28 Cal.3d at p. 486; see *Walters*, *supra*, 20 Cal.3d at pp. 206-207.)

In a vigorous and lengthy dissent, Justice Tobriner roundly criticized the majority for "hav[ing] not applied the traditional fireman's rule at all but rather hav[ing] extended the reach of the rule beyond the limits of any previous authority." (*Hubbard*, *supra*, 28 Cal.3d at p. 487 (dis. opn. of Tobriner, J.).) "Past cases applying the fireman's rule make it clear that

while a defendant may be shielded from liability for negligent acts committed prior to the fireman's or policeman's presence which cause or fail to prevent the fire or crime, the rule provides no shelter for a defendant who, after the officer arrives, commits subsequent negligent acts which cause the officer's injury." (*Id.* at p. 488; see, e.g., *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 369-371 [182 Cal.Rptr. 629, 644 P.2d 822]; see also 2 Harper & James, The Law of Torts (1956) § 27.14, p. 1504.) The facts established that "after the defendant became aware of the police officer's presence on the scene, the defendant committed *an additional and subsequent act of misconduct* which foreseeably created a new and additional risk of danger to the officer and which ultimately caused the officer's serious injuries." (*Hubbard, supra,* 28 Cal.3d at p. 488 (dis. opn. of Tobriner, J.).)

Justice Tobriner also objurgated the majority for "hav[ing] transformed the fireman's rule from a restrained doctrine that simply protects the average homeowner or citizen from potentially severe liability for mere acts of negligence in creating a situation as to which firemen and policemen are employed to respond, into a sweeping, across-the-board rule that forbids firemen and policemen from recovering any damages from persons who, with knowledge of a safety officer's presence on the scene, intentionally engage in wilful and wanton misconduct which results in serious injury to the officer." (*Hubbard, supra,* 28 Cal.3d at p. 487 (dis. opn. of Tobriner, J.).)

Adopting "the rationale expressed by Justice Tobriner in his dissent" (Assem. Com. on Finance, Insurance & Commerce, Analysis of Assem. Bill No. 2105 (1981-1982 Reg. Sess.) May 19, 1991, p. 3), the Legislature responded to *Hubbard* with legislation that ultimately amended Labor Code section 3852 to add the following provision: "(b) Notwithstanding statutory or decisional law to the contrary, any person who knows or should have known of the presence of a peace officer or firefighter is responsible not only for the results of the person's willful acts, but also for any injury occasioned to the peace officer or firefighter by the person's want of ordinary care or skill in the management of the person's property or person, which occurs after the person knows or should have known of the presence of the peace officer or firefighter, except to the extent that the comparative fault of the peace officer or firefighter contributes to the injury." (Stats. 1982, ch. 149, § 1, p. 492, enacted as urgency legislation Apr. 5, 1982.)

As noted, the decision in *Hubbard* provided the acknowledged impetus for this amendment, and the nexus sheds considerable light on whether the Legislature intended section 1714.9(a)(1) to impose liability for injuries caused by fellow officers jointly engaged in the discharge of public safety responsibilities. Even a superficial analysis suggests it did not. Most significantly, the facts in *Hubbard* represented the typical firefighter's rule

case—an injured police officer foreclosed from bringing suit against a member of the public whose conduct precipitated the intervention and whose subsequent and independent negligence or recklessness caused injury. The legislative history addresses only this paradigm; the record is conspicuously silent regarding injuries caused by fellow officers. (See, e.g., Assem. Com. on Finance, Insurance & Commerce, Analysis of Assem. Bill No. 2105, *supra*; Assem. Off. of Research, Conference Com. Rep. on Assem. Bill No. 2105 (1981-1982 Reg. Sess.) as amended Sept. 14, 1981; Sen. Democratic Caucus, Analysis of Assem. Bill No. 2105 (1981-1982 Reg. Sess.); Sen. Republican Caucus, Analysis of Assem. Bill No. 2105 (1981-1982 Reg. Sess.) Mar. 5, 1982.)

Equally telling is the choice to amend Labor Code section 3852, part of the Workers' Compensation Act. (Lab. Code, § 3600 et seq.) Section 3852 of the Labor Code allows an employee injured in the course of employment to bring an action against a third party tortfeasor notwithstanding a claim for workers' compensation; the employer can also sue to recover any benefits paid. As the Legislature understood the decision in *Hubbard*, the firefighter's rule barred such actions on the part· of peace officers and firefighters regardless of the nature of the misconduct. (Assem. Com. on Finance, Insurance & Commerce, Analysis of Assem. Bill No. 2105, *supra*, at p. 3; see *Walters*, *supra*, 20 Cal.3d at pp. 209-210 (dis. opn. of Tobriner, Acting C. J.).) "[C]ourt decisions have held that negligent or wanton conduct [by a third party] does not afford a basis for liability to a policeman or fireman for injuries incurred by them in the course of their hazardous work." (Sen. Republican Caucus, Analysis of Assem. Bill No. 2105, *supra*, at p. 2; Enrolled Bill Mem. to Governor, Assem. Bill No. 2105 (1981-1982 Reg. Sess.) Mar. 31, 1982; see Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2105, *supra*, at p. 2.) The purpose of the amendment was to rectify the perceived disparity created by judicial construction extending the rule beyond its traditional limits. (See, e.g., Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2105, *supra*, at pp. 2-3; see also Stats. 1982, ch. 149, § 2, p. 492 [amendment enacted as urgency legislation "to secure the rights of policemen and firefighters"].) At the same time, the Legislature took precautions not to inadvertently override the exclusivity of the Workers' Compensation Act. (See Lab. Code, §§ 3601, 3602.) The new legislation was expressly "not applicable to an employer of a peace officer or firefighter." (Stats. 1982, ch. 149, § 1, p. 492.) Thus, a public employer would not be liable for negligent injury caused by a co-employee. (See Gov. Code, § 825.)

Because the amendment to Labor Code section 3852 eliminated the bar to liability imposed by the firefighter's rule, the Legislature subsequently

shifted its provisions to the Civil Code and incorporated the language of Labor Code section 3852, former subdivision (b) into section 1714.9(a)(1). (Stats. 1982, ch. 258, §§ 1, 2, pp. 836-837.) As before, the avowed purpose was "specifically to reverse the effect of the Hubbard case" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2351, *supra*, at p. 4), which had "unduly broadened" the scope of the firefighter's rule with respect to third party tortfeasors (*id.* at p. 1). In codifying other exceptions as well, the Legislature remained focused on civilian third party tortfeasors. Subdivision (a)(2) of Civil Code section 1714.9 sets forth the exception for injury caused by violation of laws enacted for the protection of public safety members; superseding *Hubbard*, it expressly includes resisting arrest and similar statutes. (See *ante*, fn. 8; *Hubbard*, *supra*, 28 Cal.3d at p. 490 (dis. opn. of Tobriner, J.).) Civil Code section 1714.9, subdivision (a)(3) imposes liability when the misconduct is "intended to injure" the public safety member. (See *ante*, fn. 8.) Finally, subdivision (a)(4) of Civil Code section 1714.9 also makes arson an exception to the rule. (See *ante*, fn. 8.)

█ From this preliminary examination, we find no evidence the Legislature used the phrase "any person" to encompass other jointly involved public safety members or to extend the scope of section 1714.9(a)(1) to injury caused by them. Viewed in context, the provision demonstrates singular concern with the prototypical case in which the firefighter's rule is invoked to shield a defendant whose original misconduct occasioned an officer's presence and whose subsequent acts caused injury. Manifestly, that was "the evil to be prevented by the legislation." (*Harris* v. *Capital Growth Investors XIV*, *supra*, 52 Cal.3d at p. 1159.) Thus, whatever literal meaning "any person" may have in other contexts, applying it to fellow officers also involved in responding to the original misconduct does not " 'conform to the spirit of the act.' " (*People* v. *Pieters*, *supra*, 52 Cal.3d at p. 899.)

Further consideration of the statutory language and history as well as the practical consequences of a different interpretation only reinforces this conclusion. (See *Ex parte Ellis*, *supra*, 11 Cal. at pp. 224-225.)

A contrary determination would raise substantial policy concerns inconsistent with the purpose of the statute. To begin, the effect of section 1714.9(a)(1) is to reimpose a duty of ordinary care (see Civ. Code, § 1714), which would otherwise be abrogated by the firefighter's rule. (*Neighbarger*, *supra*, 8 Cal.4th at p. 538.) Public safety members, however, have a primary responsibility for the protection of the public they serve. (See, e.g., Gov. Code, § 26600 et seq. [sheriff]; Pen. Code, §§ 830 et seq., 836 [peace officers]; Veh. Code, § 2400 et seq. [highway patrol]; *Williams* v. *State of California* (1983) 34 Cal.3d 18, 29 [192 Cal.Rptr. 233, 664 P.2d 137] (conc.

and dis. opn. of Mosk, J.).) Sound policy mandates that the discharge of these duties takes precedence over avoiding injury to fellow officers, particularly when responding to a rapidly developing emergency or crisis.[10] (Cf. *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465]; *Ne Casek* v. *City of Los Angeles* (1965) 233 Cal.App.2d 131, 136-137 [43 Cal.Rptr. 294].)

If section 1714.9(a)(1) were extended to jointly engaged fellow officers, the potential for conflicting duties is substantial given the size of the class of possible defendants and the scope of liability. For example, the list of persons designated as "peace officers" lengthens regularly (see Pen. Code, §§ 830.3-830.65; Bus. & Prof. Code, § 7011.5), and peace officers have statewide authority to operate regardless of their original jurisdiction (Pen. Code, §§ 830.1, 830.2; see *id.*, §§ 830.3-830.5). The reliance on mutual aid agreements further increases the likelihood of joint operations involving public safety officers employed by different agencies. (See Gov. Code, §§ 3311, 8550 et seq., 8597, 8598, 8615 et seq., 8630 et seq., 55632 et seq.; Pen. Code, § 830.65 [authorizing appointment of local police and sheriff personnel in the Campaign Against Marijuana Planting].) Moreover, the statute broadens the common law exception by eliminating the requirement that the injury result from subsequent *independent* acts of misconduct committed after the defendant becomes aware of the officer's presence. (See, e.g., *Lipson* v. *Superior Court, supra*, 31 Cal.3d at p. 369.) The expansive reach of the statute could seriously compromise public safety during joint operations if the threat of a lawsuit accompanied every failure to exercise due care in effecting an arrest, quelling a disturbance, extinguishing a fire, or handling any of the other functions public safety members routinely discharge. (Cf. *Ne Casek* v. *City of Los Angeles, supra*, 233 Cal.App.2d at pp. 136-137.) We decline to ascribe to the Legislature any intent to generate conflicting duties on the part of peace officers and firefighters or to undermine their primary commitment to the public's essential safety and protection for fear of personal liability for injury to fellow officers.

Because section 1714.9(a)(1) applies "[n]otwithstanding statutory or decisional law to the contrary," imposing such liability might arguably override certain statutory immunities presently conferred on public safety personnel and their employers. (See, e.g., Gov. Code, § 850.4 [immunity for injury resulting from condition of firefighting equipment or facilities or for injury caused in fighting fires]; Veh. Code, § 17004.7 [immunity for injury or death

---

[10]The concern does not arise when the officers are employed by the same entity because the exclusivity of workers' compensation precludes suit for any negligently caused injury. (See Civ. Code, § 1714.9, subd. (d).)

caused during police pursuit under specified circumstances].)[11] While indi‐ viduals would be entitled to a defense and payment of any judgment (Gov. Code, § 825), their governmental employers would incur liability under circumstances in which they would otherwise enjoy protection from suit. (See Gov. Code, § 815.2, subd. (b).) As the Law Revision Commission commented with respect to immunity provided under Government Code section 850.4: "There are adequate incentives to careful maintenance of fire equipment without imposing tort liability; and firemen should not be de‐ terred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreason‐ able." (4 Cal. Law Revision Com. Rep. (Jan. 1963) p. 862; see *Heimberger v. City of Fairfield* (1975) 44 Cal.App.3d 711, 714-716 [117 Cal.Rptr. 482].)

As previously discussed, the cost-spreading rationale is one of the critical public policy reasons underlying the firefighter's rule. (*Walters, supra,* 20 Cal.3d at pp. 204, 205-206.) In *Neighbarger, supra,* 8 Cal.4th at page 543, we explained that "to permit firefighters to bring actions for injury caused by responding to a fire would involve the parties in costly litigation over rights of subrogation without substantially benefiting the firefighter, who is com‐ pensated either by the retirement system or the worker's compensation system. [Citation.] . . . [T]he public will pay the bill, whether the firefighter is compensated by public benefits derived from taxation, or from insurance proceeds that must be purchased. [Citation.]" Applying the firefighter's rule thus "relieve[s] various public agencies of the burden of lawsuits over rights of subrogation that are pointless because the public fisc ultimately pays regardless of the outcome . . . ." (*Ibid.*) It is highly unlikely the Legislature intended to encourage costly litigation, including the possibility of derivative actions, when the public has already financed statutory compensation of injured public safety members. (See Comment, *supra,* 71 Cal.L.Rev. at p. 246, fn. 104.)

Legislative history bears out this assessment. As to both Labor Code section 3852, former subdivision (b), and Civil Code section 1714.9, the analyses consistently noted no anticipated increase in state costs, including a report by the Assembly Finance, Insurance, and Commerce Committee. (Assem. Com. on Finance, Insurance & Commerce, Analysis of Assem. Bill No. 2105, *supra*; Legis. Counsel's Dig., Assem. Bill No. 2105, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 61; Sen. Democratic Caucus, Analysis of Assem. Bill No. 2105, *supra*; Legis. Counsel's Dig., Assem. Bill No. 2351, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 97; Sen. Democratic Caucus,

---

[11]Because the question is not before us, we express no view on the interrelationship, if any, between section 1714.9(a)(1) and any particular statutory immunity. We simply note the potential conflict that might arise if we were to adopt plaintiff's interpretation of the statute.

Analysis of Assem. Bill No. 2351, *supra*.) The bill also received support from numerous statewide police and firefighter organizations as well as the City and County of San Francisco, the City of Los Angeles, the County of Los Angeles, and the Attorney General, none of which raised any concern about potential liability. On the contrary, since the Legislature expressly allowed for employer subrogation (Civ. Code, § 1714.9, subd. (c)), employers expected to recover some portion of their payments to injured officers through suits in intervention against civilian third party tortfeasors. (See Cal. Highway Patrol Enrolled Bill Rep., Assem. Bill No. 2351 (1981-1982 Reg. Sess.) June 2, 1982.) As this case illustrates, enlarging the scope of section 1714.9(a)(1) to include jointly engaged fellow officers would more than offset those expectations. Whatever disability benefits the City of Pasadena may have recouped, the state has lost considerably more in litigation costs, derivative action judgments, and attorney fees. In the final analysis, whether the injured officer is compensated through less expensive disability benefits or more expensive litigation, the payment comes from one or another of the taxpayers' pockets. When the injured officer is adequately recompensed through legislatively enhanced disability and other benefits, statutory interpretation that increases the cost of discharging public safety obligations seems intuitively contrary to any reasonable legislative intent.

In addition to the adverse effect on the fisc, extending section 1714.9(a)(1) to fellow officers jointly discharging their duties would impair efficient judicial administration, another policy served by the firefighter's rule. (*Giorgi* v. *Pacific Gas & Elec. Co.*, *supra*, 266 Cal.App.2d at p. 360.) The "difficult problems" of determining causation (*ibid.*) are multiplied in cases turning on the propriety of chosen police tactics or emergency procedures and in reality may simply involve a judgment call on the part of the officer who inadvertently inflicts injury. (E.g., *Ne Casek* v. *City of Los Angeles*, *supra*, 233 Cal.App.2d at pp. 137-138; cf. *Seibert Security Services, Inc.* v. *Superior Court*, *supra*, 18 Cal.App.4th at p. 411; *Scott* v. *E.L. Yeager Const. Co.*, *supra*, 12 Cal.App.4th at p. 1195.) Here, for example, dueling experts offered considerable testimony debating the reasonableness of the highway patrol officers' attempts to subdue Wilkes while holding shotguns. Litigation might often devolve to time-consuming efforts to parse a series of actions attempting to prove or disprove that the critical one occurred before or after the negligent officer knew or should have known of the presence of the injured one. (See *Seibert Security Services, Inc.* v. *Superior Court*, *supra*, 18 Cal.App.4th at p. 411.) The taxpayers ultimately compensate for the injury regardless of the cause; a lengthy trial only determines from which account, inevitably at additional overall expenditure. In "reversing the effect" of *Hubbard*, the Legislature intended to make third party tortfeasors

bear the consequences of their misconduct, not burden the public with greater costs for police, fire, and medical emergency protection.

Construing section 1714.9(a)(1) as extending to jointly engaged fellow officers would also create serious anomalies in the law because section 1714.9 preserves the exclusivity of the Workers' Compensation Act. (Civ. Code, § 1714.9, subd. (d).) Thus, an injured officer would be allowed to sue when the negligent officer was employed by another agency but not by his own employer. We can discern no rational reason the Legislature would intend liability to depend solely on whether the plaintiff and defendant wore different badges and uniforms when the risk of injury is the same. Such a consequence is itself sufficiently absurd to defeat plaintiff's construction of the statute. (*People* v. *Pieters, supra,* 52 Cal.3d at p. 898; *Ex parte Ellis, supra,* 11 Cal. at pp. 224-225.) Moreover, by any estimation, recompense for injuries caused by fellow officers was not "the object to be achieved" (*Harris* v. *Capital Growth Investors XIV, supra,* 52 Cal.3d at p. 1159) nor as to them was the bar to liability imposed by the firefighter's rule "the evil to be prevented by the legislation." (*Ibid.*) An injured officer would be in no different position regardless of which agency employed the negligent officer.

For the reasons stated, we conclude the Legislature did not intend "any person" as used in section 1714.9(a)(1) to include fellow public safety members who are jointly engaged in the discharge of their responsibilities. (See *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**MOSK, J.,** Dissenting.—As a matter of statutory construction, the majority stand on shaky ground indeed. They concede that the literal language of Civil Code section 1714.9, subdivision (a) (hereafter section 1714.9(a))[1] applies to "any person," without limitation, except as to the express exemption of employers provided in subdivision (d) of that section. No doubt there are some exceptional circumstances in which we ignore the literal language of a statute in order to give effect to its manifest legislative purpose, when there is a *strong* indication that a literal interpretation would be contrary to that purpose. (See, e.g., *People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

Cal.Rptr. 918, 802 P.2d 420].) But nothing about the context or legislative history of section 1714.9(a) convinces me that construing "any person" literally to include peace officers from other agencies is at odds with the basic purposes of the statute. On the contrary, it is quite consistent with that purpose.

As the majority rightly point out, section 1714.9(a) is substantially based on " 'the rationale expressed by Justice Tobriner in his dissent' " in *Hubbard v. Boelt* (1980) 28 Cal.3d 480, 487-493 [169 Cal.Rptr. 706, 620 P.2d 156] (*Hubbard*). (Maj. opn., *ante*, at p. 1066.) In that case the majority held that a police officer injured in a high-speed chase of a reckless traffic offender was barred by the firefighter's rule from suing that person. The dissent was not a narrow, fact-specific, opinion, but rather a broad and general attack on the *Hubbard* majority's extension of the firefighter rule beyond its traditional narrow confines. As Justice Tobriner stated: "[T]he majority's policy formulation in this case has fundamentally altered the limited nature of the traditional fireman's rule, converting the rule into a broad doctrine prohibiting firemen and police officers—but no other employees—from recovering for injuries which they suffer at the hands of third persons in the course of their employment. This reasoning is not only inconsistent with the traditional limits of the fireman's rule, but in addition squarely conflicts with the principles of Labor Code section 3852, which provides that '[t]he claim to the employee for [workers'] compensation does not effect his claim or right of action for all damages proximately resulting from such injury or death *against any person other than the employer.*' " (28 Cal.3d at p. 491 (dis. opn. of Tobriner, J.), italics in Justice Tobriner's opinion.)

As Justice Tobriner further stated: "[T]he policy basis for the traditional firemen's rule rests on the notion that ordinary tax-paying members of the public hire firemen and police officers at least in part to deal with future dangers that may in the normal course of events result from the taxpayer's own negligence, and that—by analogy to insurance, for example—it is unfair and unduly burdensome subsequently to require an unfortunate, if negligent, individual taxpayer to pay again for injuries sustained when such negligence in fact occurs." (*Hubbard, supra*, 28 Cal.3d at p. 492 (dis. opn. of Tobriner, J.).) In order to confine the firefighter's rule to boundaries commensurate with this original rationale, Justice Tobriner proposed three broad limitations on the rule: It should not prevent recovery when a person commits subsequent negligent acts after the police officer arrives on the scene, nor when a person intentionally or wantonly injures such officers, nor when a person violates a statute and the officer suffering the injury was one of the class of persons for whose protection the statute was adopted. (*Id.* at pp. 488-490.) Section 1714.9(a) incorporates each of these three limitations on the firefighter's rule.

The majority state, after reviewing the *Hubbard* dissent and related legislative history, that "we find no evidence the Legislature used the phrase 'any person' to encompass other jointly involved public safety members or to extend the scope of section 1714.9(a)(1) to injury caused by them. Viewed in context, the provision demonstrates singular concern with the prototypical case in which the firefighter's rule is invoked to shield a defendant whose original misconduct occasioned an officer's presence and whose subsequent misconduct caused injury." (Maj. opn., *ante*, at p. 1068.) This statement is erroneous for two reasons.

First, such a narrow reading of section 1714.9(a) has no basis in Justice Tobriner's *Hubbard* dissent, and indeed turns that dissent on its head. The whole thrust of the dissent, as reviewed above, was to limit the firefighter's rule to its original "prototypical" situation—" 'that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences.' " (28 Cal.3d at p. 492 (dis. opn. of Tobriner, J.); see also *Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609] [holding that a police officer's personal injury action against parents negligently allowing child's disorderly party leading to officer's injury is barred by the firefighter's rule].) Section 1714.9(a) scales the firefighter's rule back to that original prototypical situation. The injury of a police officer by officers from a different agency after the police officers have arrived on a crime scene is not within the class of injury covered by this prototypical situation, and there is no reason not to construe section 1714.9(a) literally to permit police thus injured to bring civil actions.

Second, the majority find it significant that they can locate "no evidence the Legislature used the phrase 'any person' to encompass other jointly involved public safety members" (maj. opn., *ante*, at p. 1068). But why is it significant that the legislative history contains no evidence that police officers or firefighters would be included or excluded from the class of "any persons" under the statute, when the Legislature did not apparently consider *any* such occupational exemptions? Given the broad purpose and broad language of section 1714.9(a), the natural inference to be drawn from the lack of any discussion in the legislative history of whether peace officers or other groups would be exempted from the class of "any persons" is that they would *not* be so exempted.

Moreover, the majority state that their holding is limited to "injury negligently caused by a fellow officer jointly engaged with the injured officer in the discharge of their public safety responsibilities." (Maj. opn.,

*ante*, at p. 1060, fn. 3.) This is indeed a salutary limitation, and suggests that the majority cannot quite bring itself to conclude that a police officer *intentionally* injured by an officer from another agency is barred from bringing a lawsuit. But the implication of such limitation is that the term "any person" within section 1714.9(a) means one thing when a police officer is causing intentional injury to an officer from a different agency and another thing when the same officer is causing negligent injury. Such an illogical and inconsistent reading of the statute cannot be what the Legislature intended.

Nor do I agree with the majority that the language in 1714.9(a) "might arguably override certain statutory immunities presently conferred on public safety personnel and their employers." (Maj. opn., *ante*, at p. 1069.) Section 1714.9(a) states that "[n]otwithstanding statutory or decisional law to the contrary, any person is responsible . . . for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations . . . ." A key word for understanding the above passage is "responsible." "Responsible" does not necessarily mean liable, but rather that a person has a *duty*, in the common law sense, to refrain from injuring peace officers under the circumstances enumerated in the statute. Indeed, section 1714, subdivision (a) states that "[e]very one is *responsible*, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill . . . ." (Italics added.) No one doubts that the universal proclamation of responsibility in section 1714, subdivision (a) is subject to the various statutory immunities from liability. Neither in section 1714 nor in section 1714.9(a) is responsibility automatically equated with legal liability.

In other words, "any person," including a police officer, has a duty not to harm a police officer under the circumstances enumerated in section 1714.9(a), but such persons will not *invariably* be held liable if the specific facts of the injury allow the tortfeasor to invoke a governmental immunity. This interpretation is consistent with the evident purpose of section 1714.9(a), which was to limit the application of the firefighter's rule, and there is no indication in the legislative history that the section was concerned in any way with abolishing statutory immunities. On the contrary, as the language in Justice Tobriner's dissent suggests, the purpose of section 1714.9(a) is to put a peace officer or firefighter in the *same position* as other employees, not to grant them a privileged position. (*Hubbard*, *supra*, 28 Cal.3d at p. 491 (dis. opn. of Tobriner, J.).) It would be illogical to construe the statute to grant such privilege. Therefore, consistent with our duty to harmonize statutes where possible (*County of San Bernardino* v. *City of San*

*Bernardino* (1997) 15 Cal.4th 909, 933 [64 Cal.Rptr.2d 814, 938 P.2d 876]), section 1714.9(a) should be construed to hold a person responsible, the firefighter's rule notwithstanding, for injury to peace officers committed under certain enumerated circumstances, but also to permit the person to defend against a suit with whatever statutory immunities would be available to any other tortfeasor.

The other arguments made by the majority in support of their position are also unpersuasive. The majority state, *ante*, on page 1072: "Construing section 1714.9(a)(1) as extending to jointly engaged fellow officers would also create serious anomalies in the law because section 1714.9 preserves the exclusivity of the Workers' Compensation Act. [Citation.] Thus, an injured officer would be allowed to sue when the negligent officer was employed by another agency . . . . We can discern no rational reason the Legislature would intend liability to depend solely on whether the plaintiff and defendant wore different badges and uniforms when the risk of injury is the same. Such a consequence is itself sufficiently absurd to defeat plaintiff's construction of the statute."

This statement does not withstand analysis. It is not the firefighter's rule that prohibits a firefighter or police officer from suing his or her employer, but rather the Workers' Compensation Act, via section 1714.9, subdivision (d), that imposes that limitation. If there is an "anomaly," it is because that act creates numerous apparent anomalies, permitting an employee to sue a tortious third party but not to sue an equally tortious employer or fellow employee. These apparent anomalies are the result of the legislative balancing of various interests. The Legislature has chosen to limit the liability of employers, but not of third parties, for on-the-job injuries (Lab. Code, § 3852), balancing the efficiencies of the workers' compensation system with the right of employees to seek judicial redress for personal injury. Such legislative balancing is not absurd, and therefore neither is a legislative scheme which permits a police officer to sue tortious third parties, including other government agencies, but not to sue his or her employer. In other words, the most reasonable assumption is that section 1714.9, subdivision (d) incorporates general workers' compensation principles into suits by police officers and firefighters, and that therefore police officers or other government employees cannot sue government employees employed by the same agency, but can sue government employees from other agencies to the extent permitted by the Workers' Compensation Act.

Apart from questions of statutory construction, the majority make a number of policy arguments why its interpretation of section 1714.9(a) is sound. Aside from the fact that this court's conception of sound public

policy should not displace that of the Legislature, I find these policy arguments unconvincing.

The majority state: "Sound policy mandates that the discharge of [police officers'] duties [to protect the public] takes precedence over avoiding injury to fellow officers, particularly when responding to a rapidly developing emergency or crisis." (Maj. opn., *ante*, at p. 1069.) That is no doubt the case, and police officers' activity would be protected to some degree by governmental immunities of various types. Also, this sound policy mandate would shape the fact finder's determination of whether a peace officer acted reasonably under the circumstances. But what happens when, as the jury apparently found in this case, the peace officer was negligent not in the sense that he failed to protect the other peace officer from harm, but rather that he failed to follow reasonable police procedures—that is, those designed to protect the *public*—in attempting to apprehend a suspect with one hand while holding a rifle with the other? In such cases, the interest in protecting the public and in allowing police officers to be fairly compensated through the tort system for their injuries are not in conflict. In other words, there is no reason to assume that enforcing a rule of compensation for injurious conduct by fellow police officers will be at odds with the goal of public safety. Moreover, given the strong moral and practical disincentives for police officers not to harm fellow police officers, it is highly doubtful that the abstract threat of (usually indemnifiable) liability will significantly further inhibit a police officer from acting vigorously and appropriately in an emergency situation.

The majority cite the "costs-spreading rationale" as another reason for supporting its position, quoting language in *Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 543 [34 Cal.Rptr.2d 630, 882 P.2d 347]: " '[T]o permit firefighters to bring actions for injury caused by responding to a fire would involve the parties in costly litigation over rights of subrogation without substantially benefiting the firefighter, who is compensated either by the retirement system or the workers' compensation system.' . . . Applying the firefighter's rule thus 'relieve[s] various public agencies of the burden of lawsuits over rights of subrogation that are pointless because the public fisc ultimately pays regardless of the outcome . . . .' " (Maj. opn., *ante*, at p. 1070.) The above quoted language is taken from a context in which we were concerned with demonstrating that the firefighter's rule should not be extended to private firefighters. But, as used by the majority, this statement proves too much. It is an argument for the extension of the firefighter's rule to bar all lawsuits by *all* public employees. The argument has no special force with respect to police officers suing other police officers. From a public employee's standpoint, a private right of action is frequently advantageous because the tort system may compensate him to a greater extent than

the disability or retirement system. The Legislature, having obviously considered this cost-spreading, efficiency argument as reason not to restrict the firefighter's rule, nonetheless enacted section 1714.9(a) and allowed firefighters and peace officers to maintain private rights of action under the circumstances enumerated in the statute. It is not for us to question this legislative judgment.

The majority also contend that we should not consider "any person" to include fellow peace officers because such a construction would have an "adverse effect on the fisc." (Maj. opn., *ante*, at p. 1071.) But is this really the case? California courts have long assumed that police officers could sue other police officers. (See *Rose* v. *City of Los Angeles* (1984) 159 Cal.App.3d 883 [206 Cal.Rptr. 49].) As far as I can discern, there has been no substantial impact on the public treasury as a result, and the majority demonstrate none beyond their bald assertion. There is indeed every reason to believe that, in light of the skill and training of our peace officers, such lawsuits are relatively rare events. It is therefore unsurprising that, as the majority point out, many public agencies supported the passage of section 1714.9(a): A public agency would have far more to gain, in terms of recovering workers' compensation costs through subrogation of an injured officer's personal injury award, as is permitted by section 1714.9, subdivision (c), than it would have to lose in the rare event that one of its officers injured an officer from another agency.

In short, the language and purpose of section 1714.9(a) lead me to conclude that "any person" should be taken literally, and that there is no implied exemption for peace officers or any other occupational classification. In the final analysis, the real policy question is this: Do the benefits of permitting a police officer to sue an officer from a different agency who has injured him—including the benefits that accrue directly to the police officer—outweigh the harm such suits may cause, financially and otherwise, sufficient to create an exemption from liability under section 1714.9(a)? This is a question that the Legislature is far better equipped than this court to address, for it is better able to measure the *magnitude* of the various harms and benefits. Our task is simply to give effect to the language and purpose of the statute, and that should lead us to affirm the Court of Appeal's holding that plaintiff in this case has a right of action against the State of California and a California Highway Patrol officer. The Legislature can easily amend the statute if its own public policy assessment so dictates.