[Civ. No. 58453. Second Dist., Div. Four. Apr. 8, 1981.]

FRUEHAUF CORPORATION, Cross-complainant and Appellant, v. LAKESIDE CHEVROLET COMPANY, Cross-defendant and Respondent.

COUNSEL

Chase, Rotchford, Drukker & Bogust, Ronald A. Dwyer and Toni Rae Bruno for Cross-complainant and Appellant.

King, Williams & Welzenbach, Barbara Kekich, Michael P. King and Steven D. Lansford for Cross-defendant and Respondent.

OPINION

**WOODS, J.**—Cross-complainant Fruehauf Corporation appeals from a declaratory judgment in favor of cross-defendant Lakeside Chevrolet Company, holding that Lakeside is not liable to Fruehauf for equitable contribution or indemnity.

I

Plaintiffs Sharon Berry and David Gutierrez filed a complaint against Power Tool & Supply Company (hereinafter referred to as Power Tool), John A. Zettel, and Fruehauf Distributing Company (hereinafter Fruehauf), alleging negligence and strict liability. The complaint alleged that, on January 7, 1976, plaintiffs' automobile was struck by a trailer which had become detached from its towing vehicle. The complaint alleged that the trailer was owned by Power Tool, driven by Zettel, and manufactured by Fruehauf. The complaint also alleged that the accident occurred because the trailer was operated with improper safety chains and without breakaway brakes.

Fruehauf answered the complaint and filed a cross-complaint for equitable contribution and indemnity against Lakeside Chevrolet Company (hereinafter referred to as Lakeside), from whom Fruehauf had purchased the trailer. A similar cross-complaint for indemnity was filed against Lakeside by Zettel and Power Tool.

On March 8, 1979, Lakeside filed a motion for summary judgment as to the cross-complaints of Fruehauf, Power Tool and Zettel. Following a hearing on the motion, the trial court ruled that the motion for summary judgment was granted as to appellant Fruehauf and denied as to Power Tool and Zettel.

The record reflects the following ownership history of the trailer: Richard Procknow constructed the trailer and installed safety chains by welding them to each side of the trailer tongue. Sometime prior to July 1975, Procknow traded the trailer to Lakeside. In July 1975, Lakeside sold the trailer to Fruehauf, and in the same month, Fruehauf sold the trailer to Power Tool. Power Tool owned the trailer on the date of the accident, and it was being operated by Power Tool's employee, Zettel.

In its motion for summary judgment, Lakeside demonstrated that the trailer in question was sold to Fruehauf, as part of a bulk sale of six

used trailers, sold "as is." The motion was based in part on the language of Vehicle Code section 24007, which exempts from its inspection and repair requirements any person who sells a new or used vehicle to a dealer. The trial court apparently granted the summary judgment based on its finding that the Vehicle Code relieved Lakeside from any duty to inspect or repair the trailer prior to sale. ▉ As we will explain hereinafter, the exemption from liability under the Vehicle Code establishes as a matter of law that Lakeside is not responsible either under a theory of general negligence or strict liability.

## II

Lakeside's liability cannot be predicated on a finding that it violated Vehicle Code section 24007. That section provides in pertinent part: "No dealer or person holding a retail seller's permit shall sell a new or used vehicle which is not in compliance with the provisions of this code and departmental regulations adopted pursuant to this code, unless the vehicle is (1) sold to another dealer, (2) sold for the purpose of being wrecked or dismantled, or (3) sold exclusively for off-highway use."

Our research has disclosed no cases evaluating the effect of the three exemptions contained in Vehicle Code section 24007. However, it is apparent from a reading of the statute that the Legislature intended to exempt transactions which involve no danger to the consuming public. If a vehicle is sold for the purpose of being wrecked or dismantled, or sold exclusively for off-highway use, the public is not endangered by the failure of the seller to inspect for and repair any defects. Likewise, if a vehicle is sold to another dealer, no such danger exists because that dealer is bound by the provisions of Vehicle Code section 24007. Before that purchasing dealer may sell the vehicle to a consumer, he must bring the vehicle into compliance with the provisions of the Vehicle Code by inspecting for and remedying any dangerous defects.

Under the circumstances, it is reasonable to assume that a dealer who sells a vehicle to another dealer would rely on the terms of the section and believe that he could sell the vehicle as is to another dealer, without subjecting himself to liability to any future consumer. In the declaration in support of the motion for summary judgment, the president of Lakeside declared that it is their custom and practice to accumulate trailers received as trade-ins on other vehicles and to sell them to Fruehauf on a wholesale basis. He stated that it is understood between them that, when a unit is sold wholesale to another dealer, the dealer who sells it

to the ultimate consumer is responsible for seeing to it that the vehicle complies with all Vehicle Code requirements. He further declared that the sale of the trailer in this case was made on an "as is" basis, with no warranties.

■ It is well established in California that a vendor may eliminate potential liability to a buyer for breach of warranty by expressly selling an item of merchandise "as is." California Uniform Commercial Code section 2316 provides in pertinent part as follows: "...(3) ...(a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty;..."

The Uniform Commercial Code comment to section 2316 states: "Paragraph (a) of subsection (3) deals with general terms such as 'as is,' 'as they stand,' 'with all faults,' and the like. Such terms in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved."

In conducting the sale in the instant case, appellant has justifiably relied on both the Commercial Code and the Vehicle Code in assuming that its bulk sale of trailers, as is, would shield it from liability to the immediate purchaser and to any ultimate consumers. In *Thrash* v. *U-Drive-It Co.* (1951) 93 Ohio App. 388 [113 N.E.2d 650], the court made the following observation on similar facts: "[T]he U-Drive-It Company had the right to suppose that its vendee, the Spot Motor Company, engaged in the business or trade of buying and selling used cars, would, in the absence of representation or warranty that the car was in good and safe condition, fulfill its duty to examine and repair an old and dangerous vehicle before selling it for use on the highways...." (*Id.*, at p. 656.)

The court went on to observe: "Everyone knows that it is common practice for owners of used cars to sell them or trade them in on other cars to secondhand dealers. The amount of money received from the sale or the amount of credit given on the purchase of another, is generally dependent on the make, age and condition of the vehicle. The used car dealer has general knowledge of the various degrees of imperfection in old and worn cars, and has the technical knowledge to ascertain defects and weaknesses, and he buys them on that basis. They are not sold

with the knowledge or expectation that they will be resold to third persons without examination or tests...." (*Ibid.*)

In affirming the ruling of the court of appeals, the Supreme Court of Ohio stated: "The seller of a used motor vehicle to a dealer occupies and should be placed in a different position, especially where he makes no representations or warranties as to the condition of the vehicles sold and where any defects or weaknesses therein would be detectable by the dealer upon examination before resale for further use. [¶]....[¶] We conclude that where the owner of a used motor vehicle sells the same 'as is' to a dealer in those articles for such disposition as the dealer may make of it, such owner may not ordinarily be held liable for injuries occasioned to one who purchased the vehicle from the dealer or for injuries to another, because of faults or imperfections in the vehicle which existed or occurred during the time it was in the possession of such owner." (*Thrash* v. *U-Drive-It Co.* (1953) 158 Ohio St. 465 [110 N.E.2d 419, 422, 423].)

We are persuaded by the reasoning of the Ohio court, and find appellant's position even more compelling, supported as it is by the exemption expressly granted by the Legislature. We believe that exemption reflects a legislative determination that, when a vehicle is sold to a dealer, all liability to the consuming public is shifted from that seller to that buying dealer.

A remarkably similar case is found in *Ikerd* v. *Lapworth* (7th Cir. 1970) 435 F.2d 197. In that case, a Chrysler Plymouth new car dealership customarily sold its used cars taken as trade-ins to used car dealers. In the *Ikerd* case, Chrysler sold a used car, along with five other used cars, wholesale to a used car dealer. The bill of sale reflected that all vehicles were being sold "as is." The court held that where the dealer in new automobiles wholesaled trade-ins to the used automobile dealer, without inspecting, and expressly disclaimed any warranty and had reason to rely on the used automobile dealer to inspect and recondition, the intervention of the used automobile dealer relieved the new automobile dealer of any duties claimed to be owed to the consumer.

The *Ikerd* case is of particular interest here, because (unlike *Thrash* v. *U-Drive-It Co., supra*, where liability was alleged only on grounds of negligence) the *Ikerd* complaint charged negligence, breach of implied warranty and strict products liability. The *Ikerd* court acknowledged that, in many jurisdictions, a seller has been held liable in strict liability

for the sale of a used vehicle. However, the court noted, in none of those circumstances was the sale to a used car dealer, with warranty expressly negated. The court concluded that the seller was justified in relying on the dealer-purchaser to make any necessary repairs on the car prior to its sale to a consumer. (*Ikerd* v. *Lapworth, supra*, 435 F.2d at p. 201.) The court found that liability either in negligence or strict liability arises only if Chrysler breached some duty it owed to the plaintiffs. The intervention of the used car dealer relieved Chrysler of any duties to the plaintiffs, and thus no action in negligence, breach of warranty, or strict liability would lie. (*Id.*, at p. 203.)

■ We conclude that Vehicle Code section 24007 expressly exempted respondent from the obligation to inspect or repair the trailer it sold to Fruehauf.[1] We also conclude that respondent was justified in relying on the terms of the statute to relieve it from any liability to the consumer for negligence, breach of implied warranty or strict liability and to impose on the dealer-purchaser full responsibility for the condition of the vehicle at the time it was sold to the consuming public.

The trial court properly concluded that Fruehauf is not entitled to cross-complain against respondent for either indemnity or equitable contribution. Therefore, the judgment is affirmed.

Files, P. J., and McClosky, J., concurred.

A petition for a rehearing was denied April 29, 1981, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1981.

---

[1]Appellant argues that Vehicle Code section 24007 has no application to the facts of this case, in that the record does not establish that appellant is in fact a dealer. We disagree. Sufficient evidence exists in the record to justify the conclusion that appellant is a "dealer" within the meaning of the statute. For example, in appellant's answer to the complaint it admits that "it is a corporation lawfully engaged in the business of the manufacture and sale of certain automotive equipment, among other things."