[Nos. F036205, F037576, F037832. Fifth Dist. Mar. 12, 2002.]

PADRES HACIA UNA VIDA MEJOR et al., Plaintiffs and Respondents,
v.
GRAY DAVIS, as Governor, etc., et al., Defendants;
COUNTY OF KERN, Movant and Appellant.

[No. F037828. Fifth Dist. Mar. 12, 2002.]

PADRES HACIA UNA VIDA MEJOR et al., Plaintiffs and Respondents,
v.
GRAY DAVIS, as Governor, etc., et al., Defendants;
SAFETY-KLEEN, INC., Intervener and Appellant.

COUNSEL

Bernard C. Barmann, Sr., County Counsel, and Stephen D. Schuett, Deputy County Counsel, for Movant and Appellant.

Gray, Cary, Ware & Freidenrich, J. Martin Robertson; Hogan Guiney Dick and Michael M. Hogan for Intervener and Appellant.

California Rural Legal Assistance Foundation, Center on Race, Poverty & the Environment, Luke W. Cole and Caroline Farrell for Plaintiffs and Respondents.

OPINION

ARDAIZ, P. J.—Kern County and the owner-operator of a hazardous waste facility appeal the issuance of a writ of mandate directing the Governor to convene an administrative appeal board to review the county's approval of a conditional use permit for the modification and expansion of the hazardous waste facility. The county and the owner contend the community group challenging the permit failed to timely file a completed application for administrative appeal with the Governor. We affirm.

### PROCEDURAL HISTORY AND FACTS

In October 1991, Safety-Kleen (Buttonwillow) Inc. (S-K) (then known as Laidlaw Environmental Services (Lokern), Inc.) noticed its intention to seek a conditional use permit and general plan amendment from Kern County to modify and expand its hazardous waste facility near Buttonwillow, California.

On December 12, 1994, the Kern County Board of Supervisors, acting on behalf of Kern County (collectively the County), adopted resolution No. 94-684 approving Conditional Use Permit No. 4, Map No. 97 (the CUP), concerning the hazardous waste project.

On January 9, 1995, Padres Hacia una Vida Mejor, an unincorporated association of residents from Buttonwillow, California, and eight individuals

who are farmworkers or spouses (collectively Padres) submitted to the Governor of the State of California an application for appeal, under the Tanner Act,[1] of the County's approval of the CUP. The application asserted 24 separate reasons why the conditions imposed by the CUP did not adequately protect the public health, safety and welfare. The application also acknowledged that the appeal was not yet ripe for consideration because, although local approval of the CUP had been obtained, three permits were still required from state agencies regulating toxic substances, air pollution and water quality. These three state permits were obtained over the next four and a half years.

In a letter dated January 17, 1995, the California Environmental Protection Agency (Cal-EPA) acknowledged Padres's appeal was timely filed and agreed with the statement by Padres that the appeal should not go forward until all the necessary permits from state agencies had been obtained. The letter then stated:

"It has been our practice to treat the application for an appeal as incomplete until such time as all state agencies have made an appropriate permit determination for the project. Until that time, the appeal board cannot be convened.

"We will retain your appeal as having been timely filed. Once all state permit determinations have been made, you will need to resubmit your appeal to this office, for a further evaluation concerning convention of an appeal board.

"Please direct all future correspondence concerning this appeal directly to the California Environmental Protection Agency, Office of the Secretary, with a carbon copy to the Office of the Governor, Legal Affairs."

After nearly 1,600 days elapsed, the last permit was obtained on June 1, 1999, when the San Joaquin Valley Unified Air Pollution Control District issued S-K an authority to construct (ATC). On June 30, 1999, Padres filed with the hearing board of the district a petition for an appeal hearing regarding the issuance of the ATC. By letter dated July 14, 1999, the hearing board advised Padres its petition was rejected because it was filed late and without the required filing fee.

Nine days later, on July 23, 1999, Padres sent a letter to the Governor and Cal-EPA to inform them that all the permits had been approved for the

---

[1]Health and Safety Code sections 25135 et seq. and 25199 et seq. Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

proposed expansion and modification of the hazardous waste facility and to request the Governor to convene an administrative appeal board under the Tanner Act to review the January 5, 1995, appeal. The letter added as additional grounds for the appeal that the site had accepted 2,200 tons of radioactive waste for disposal, despite the fact that it was not licensed to accept radioactive waste.

Between July 23, 1999, and November 12, 1999, Padres's counsel made a series of telephone calls to the Attorney General's Office and Cal-EPA in an attempt to get a Tanner board appointed. On November 12, 1999, Padres sent a second letter to Cal-EPA requesting the appointment of a Tanner board to hear its appeal. Padres did not receive a written response from either the Governor or Cal-EPA to its July 23, 1999, or November 12, 1999, letters until after filing its lawsuit against the Governor requesting a writ of mandate.

In March 2000, counsel for Padres was informed orally by a deputy attorney general that the Governor had determined the Padres appeal should be denied because it was not timely perfected. About a month later, this position was confirmed in a letter dated April 17, 2000, from the Governor's office that stated the "appeal has been rejected because you failed to perfect the appeal in a timely manner" and explained "you failed to resubmit your complete appeal to this office for evaluation within the required time frame under the Tanner Act after the June 1, 1999, date." June 1, 1999, was when the air pollution control district issued the ATC.

In the meantime, on December 21, 1999, Padres filed a petition for writ of mandate directing Gray Davis, in his capacity as Governor of the State of California, to appoint an administrative appeal board under the Tanner Act to review Padres's application for appeal of the County's approval of the CUP for the modification of S-K's hazardous waste facility. The petition was filed in the Superior Court of the City and County of San Francisco.

On April 5, 2000, Governor Davis filed a motion requesting the venue be changed from the City and County of San Francisco to Kern County. The County and S-K filed motions to intervene on April 5 and 6, 2000. In May 2000 the Superior Court of the City and County of San Francisco granted the motion to change venue and denied the motions to intervene. On July 18, 2000, the County and S-K filed notices of appeal regarding the denial of their motions to intervene.

In August 2000 the County and S-K requested the Superior Court for the County of Kern for leave to participate in the mandamus action as amicus

curiae. The court allowed the County and S-K to file a joint brief opposing the grant of a peremptory writ of mandate and to file requests for judicial notice, but denied their request to participate in oral argument.

On September 1, 2000, the trial court heard arguments on the petition for peremptory writ of mandate and took the matter under submission. On October 5, 2000, the trial court issued its three-page ruling granting the writ. The "Judgment and Order Directing Issuance of Writ of Mandate" was filed on December 4, 2000. Two days later, the peremptory writ of mandate was issued directing the Governor to "[c]onvene an appeal board as required by the Tanner Act."

On December 13, 2000, the County and S-K filed a motion to vacate the judgment and the writ. The County and S-K also attempted to obtain a stay of the enforcement of the writ of mandate. On January 4, 2001, the trial court denied the motion to vacate the judgment and writ and declined to stay enforcement of the judgment and writ.

On January 12, 2001, the County and S-K filed a petition for writ of mandate and a request for stay of the judgment and writ with this court, which denied the petition and request four days later. (*County of Kern v. Padres Hacia una Vida Mejor*, F037379.)

The County and S-K next filed a notice of appeal of the judgment, writ and order denying their motion to vacate the judgment and writ. The appeal was consolidated with their earlier appeals of the denial of their motions to intervene. Those consolidated appeals (Case Nos. F036205, F037576, F037828 & F037832) are the subject of this decision.

On July 31, 2001, the County and S-K filed a petition in this court seeking a stay of the writ mandating the convention of the administrative appeal board under the Tanner Act (the Tanner Board) or an accelerated hearing date because they believed the impending hearing before the Tanner Board might preclude them from asserting certain jurisdictional and equitable defenses to the convention of the Tanner Board. This court summarily denied the petition on September 7, 2001.

The Tanner Board was constituted and James R. Ryden, administrative law judge, Cal-EPA, was designated its presiding officer. Proceedings before the Tanner Board included a prehearing conference on March 15, 2001, hearings on motions to compel discovery on May 9 and 22, 2001, a closed meeting on November 6, 2001, for confidential mediation, and a public hearing on November 14, 15 and 16, 2001, in Bakersfield, California. The

parties report that on January 16, 17 and 18, 2002, the Tanner Board resumed but did not complete its hearing to determine whether or not Padres's application for appeal should be accepted. The hearing is scheduled to resume on March 13, 14 and 15, 2002.

The foregoing procedural history is limited to those matters relevant to the present appeals concerning the writ of mandate directing the Governor to convene a Tanner Board. Further information on another portion of the extensive litigation arising from the attempt to enlarge the hazardous waste facility is set forth in *Laidlaw Environmental Services, Inc., Local Assessment Com. v. County of Kern* (1996) 44 Cal.App.4th 346 [51 Cal.Rptr.2d 666].

DISCUSSION

I

*County and S-K Have Standing to Appeal*

The County and S-K assert they have standing to bring this appeal because (1) they should have been permitted to intervene in the action; (2) they are "aggrieved" parties for purposes of filing a motion to vacate the judgment; and (3) each also is a "party aggrieved" within the meaning of Code of Civil Procedure section 902 and, thus, may appeal the judgment. For purposes of this decision, we assume without deciding that the County and S-K have standing to bring this appeal.

II

*The Trial Court Properly Granted the Writ of Mandate Directing the Governor to Convene the Tanner Board*

The merits of this appeal concern the meaning of certain provisions of the Tanner Act that set forth the procedures for an administrative appeal of a local agency's decision on a hazardous waste facility project. The relevant provisions of the Tanner Act concerning such an administrative appeal are set forth in sections 25199.9[2] and 25199.10.[3]

Broadly stated, the claim by the County and S-K that Padres's administrative appeal was properly rejected by Cal-EPA is undermined by two main

---

[2]Section 25199.9, subdivision (a) states in pertinent part: "[A]ny interested person may file an appeal of a land use decision made by a local agency for a specified hazardous waste facility project pursuant to subdivision (e). The . . . interested person shall file the appeal within 30 calendar days after the date the local agency takes final action on the land use decision."

Section 25199.9, subdivision (e) states: "If an application for a land use decision for a specified hazardous waste facility project is approved by a local agency, any interested person may file an appeal of the approval with the Governor or the Governor's designee. An appeal

problems. First, in handling Padres's application for an administrative appeal, Cal-EPA created a procedure not set forth in the statute and imposed it on Padres. Second, Cal-EPA did not inform Padres of an important aspect of the extrastatutory procedure it created, namely, the amount of time in which Padres was required to "resubmit" its application.

There is no evidence the extrastatutory procedure was imposed on Padres in bad faith for the purpose of thwarting Padres's right to a hearing before the Tanner Board. Rather, it appears Cal-EPA created the extrastatutory procedure as a pragmatic way to deal with the procedural awkwardness arising in certain situations as a result of the Tanner Act's silence concerning what should happen between (1) the determination by the Governor or his designee that an application for appeal relates to a project that has not received all the required state agency permits and (2) the act by the Governor or his designee directing a Tanner Board be convened.

## A. *Standard of Review*

 The standards applicable to appellate review of a trial court's interpretation of a statute are well established. Appellate courts review statutory interpretation de novo. (*Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1143 [64 Cal.Rptr.2d 527].)

"[W]hen statutory language is clear and unambiguous, we need not construe its meaning. [Citation.] However, where the provisions of a statute are

---

may be filed pursuant to this subdivision only if the appeal is based solely on the grounds that the conditions imposed on the project by the land use decision do not adequately protect the public health, safety, or welfare. The Governor or the Governor's designee shall convene an appeal board pursuant to this subdivision if the proponent for the specified hazardous waste facility project has applied for, and obtained, all permits for the project which can be obtained prior to its construction from those responsible agencies which are state agencies."

[3]Section 25199.10 provides in part: "(a) If an appeal is filed pursuant to subdivision . . . (e) of Section 25199.9, . . . the Governor or the Governor's designee shall determine within five working days whether the proponent has obtained all permits for the specified hazardous waste facility project which can be obtained before construction from those responsible agencies which are state agencies, and which were obtainable when the appeal was filed. If, because the application for the appeal is incomplete, the Governor or the Governor's designee is unable to determine, within five working days, whether or not the appeal board should be convened, the Governor or the Governor's designee shall return the application for appeal to the . . . interested party who filed the appeal. The . . . interested party shall resubmit the completed application for an appeal within 20 calendar days after receiving the returned appeal and if the . . . interested party fails to do so, the Governor or the Governor's designee shall not reconsider whether to convene an appeal board.

"(b) If the Governor or the Governor's designee determines, pursuant to subdivision (a), that the proponent has obtained all permits for the specified hazardous waste facility project which can be obtained before construction from those responsible agencies which are state agencies, or if an appeal is filed pursuant to paragraph (1) of subdivision (c) of Section 25199.9, the Governor or the Governor's designee shall convene an appeal board within 30 days after making that determination or receiving that appeal . . . ."

ambiguous or conflict, we must engage in statutory construction. [Citation.] Our primary purpose is to determine the intent of the Legislature. [Citation.] To do so, we first examine the words of the statute itself, attributing the usual, ordinary, and commonsense meaning to them. [Citation.]" (*Santa Ana Unified School Dist. v. Orange County Development Agency* (2001) 90 Cal.App.4th 404, 408-409 [108 Cal.Rptr.2d 770].) Furthermore, when courts construe a statute, they simply ascertain and declare what is in terms or in substance contained therein and do not insert what has been omitted. (Code Civ. Proc., § 1858.)

We are not aware of (1) any published decision analyzing the procedural steps imposed upon an interested person pursuing an administrative appeal under the Tanner Act, (2) any administrative regulation that amplifies or explains the Tanner Act's administrative appeal provisions, or (3) any published legal opinion of the Attorney General interpreting the administrative appeal provisions of the Tanner Act. Nor does the legislative history of the Tanner Act provided by the parties directly address the issues raised in this case. Accordingly, the construction of sections 25199.9 and 25199.10 required by this case presents an issue of first impression.

B. *Padres's Application Was Not "Incomplete" for Purposes of Section 25199.10*

The County and S-K contend (1) Padres's January 5, 1995, application for appeal was "incomplete" within the meaning of section 25199.10, subdivision (a); (2) Padres failed to resubmit a completed application for appeal within the required time frame; (3) Padres waived any argument that Cal-EPA's January 17, 1995, determination was not reasonable, appropriate or consistent with the Tanner Act; and (4) there must be a definite period for resubmitting a completed application for an appeal under the Tanner Act.

The first mandatory step of the administrative appeal process contained in the Tanner Act requires the "interested person" to "file the appeal within 30 calendar days after the date the local agency takes final action on the land use decision." (§ 25199.9, subd. (a).) In this case, the Kern County Board of Supervisors approved the CUP on December 12, 1994, and Padres submitted its application for appeal on Monday, January 9, 1995. The application was submitted within the required 30 calendar days and was acknowledged as timely filed by Cal-EPA.

The second mandatory step is imposed on the Governor or his designee. "[T]he Governor or the Governor's designee shall determine within five working days whether the proponent has obtained all permits for the specified hazardous waste facility project which can be obtained before construction from those responsible agencies which are state agencies . . . ."

(§ 25199.10, subd. (a).) In this case, Cal-EPA's January 17, 1995, letter indicated the appeal board could not be convened until all state agencies made an appropriate permit determination for the project. This letter satisfied the requirement that the Governor's designee determine within five working days[4] whether all state agency permits had been obtained.

The parties disagree on the third mandatory procedural step to be applied to the facts of this case. On one hand, the County and S-K argue Cal-EPA properly required Padres to resubmit the application after all state agency permits for the project had been obtained because the application was "incomplete" within the meaning of subdivision (a) of section 25199.10 at the time Padres submitted it. On the other hand, Padres contends the next mandatory step was for the Governor to convene a Tanner Board once the air pollution control district issued the ATC.

The position of the County and S-K regarding the third mandatory step is tied to their interpretation of the term "incomplete." However, the problem with their interpretation is illustrated by applying it, along with the mandatory provisions of section 25199.10, to the facts of this case.

When the Governor or his designee determines an application for appeal is "incomplete," the Tanner Act states they *"shall* return the application for appeal to the . . . interested party." (§ 25199.10, subd. (a), italics added.) Next, the interested party *"shall* resubmit the *completed* application for an appeal within 20 calendar days after receiving the returned appeal . . . ." (§ 25199.10, subd. (a), italics added.) If an application cannot be "completed" unless it shows the project obtained all applicable state agency permits, then it would have been impossible for Padres to resubmit a "completed application" within the required 20 calendar days. The consequence of failing to resubmit a "completed application" within 20 calendar days is that the Governor or his designee *"shall* not reconsider whether to convene an appeal board." (§ 25199.10, subd. (a), italics added.) This mandatory language, when coupled with the interpretation of the term "incomplete" advocated by the County and S-K, would prevent an interested party, like Padres, from ever presenting its position to an appeal board when any of the state agency permits were obtained more than 55 days after the local land use determination. Furthermore, Padres could not avoid this trap by waiting to submit its initial application *after* all of the state agency permits had been obtained by the project because of the requirement that the application for appeal must be submitted within 30 calendar days of the County's approval of the CUP.

---

[4]Monday, January 16, 1995, was Martin Luther King, Jr., Day and was not a working day.

Cal-EPA recognized the Catch-22[5] its interpretation of the term "incomplete" produced in the context of a timely filed application relating to a project that had not yet received all required state agency permits. To create a way around the Catch-22, Cal-EPA implemented an extrastatutory procedure pursuant to which Cal-EPA (1) retained Padres's application and (2) instructed Padres to "resubmit your appeal to this office" after all state permit determinations had been made. Because Cal-EPA's January 17, 1995, letter did not inform Padres that its resubmission would be subject to a deadline, Padres was not aware of the length of the resubmission period, or even the existence of such a period, until after that period had expired.

We construe the term "incomplete" to refer to an application containing a defect that can be cured by the interested person and, thus, avoid (1) the absurdity of creating the Catch-22 arising from the interpretation of the County and S-K, or (2) violating Code of Civil Procedure section 1858 by inserting an additional procedure into the Tanner Act. Accordingly, an otherwise valid application for administrative appeal is not "incomplete" within the meaning of section 25199.10, subdivision (a), simply because all applicable state agency permits for the project have not been obtained. Rather, an application is "incomplete" when the Governor or his designee cannot determine (1) whether the appeal is based solely on the grounds that the conditions imposed on the project do not adequately protect the public health, safety or welfare, or (2) whether or not the state agency permits have been obtained. If the appeal is based on the required grounds and the application does not provide information about the state agency permits, then the application should be returned to the applicant.[6] The applicant should resubmit and advise whether all the state agency permits have been obtained or not. If the permits have been obtained, then the Governor or his designee will know that the Governor is obligated to convene a Tanner Board. If the state agency permits have not been obtained, then the Governor will know his duty to convene a Tanner Board will not arise until such permits have been issued.

As written, section 25199.10 is silent about what happens from the time the Governor or his designee determines not to convene an appeal board because the required state agency permits have not been obtained by the project until the time the Governor or his designee determines all state agency permits for the project have been obtained. Despite the Legislature's silence about that time period, subdivision (e) of section 25199.9 clearly imposes a mandatory obligation on the Governor or his designee to convene

---

[5]Heller, Catch 22 (1961).

[6]This type of defect can be corrected by the applicant and is the type that renders an application "incomplete."

an appeal board if all state agency permits have been obtained by the proponent of the project.[7]

In light of this silence and the mandatory obligation imposed on the Governor or his designee by the statute, we hold the third step mandated by the Tanner Act under the facts of this case was for the Governor to convene a Tanner Board after the project obtained all required state agency permits. The extrastatutory procedure of resubmission created by Cal-EPA and applied to Padres goes beyond what is required by the Tanner Act[8] and cannot be considered a valid administrative regulation because, among other things, its creation did not comply with the Administrative Procedure Act. (Gov. Code, § 11340 et seq.; see *Cuadra v. Millan* (1998) 17 Cal.4th 855, 864, fn. 10 [72 Cal.Rptr.2d 687, 952 P.2d 704], disapproved on another ground in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].)[9]

The County and S-K present a parade of horribles to attack the interpretation of section 25199.10 that does not fill the silence of the Tanner Act about what is to occur between the time the Governor or his designee determine that all the required state agency permits have not been obtained by a project, and the time the Governor convenes a Tanner Board after all the permits have been obtained. However, the silence has existed for 15 years and the Legislature has not acted to create statutory procedures to fill the silence. Nor has Cal-EPA promulgated administrative regulations to address the silence. Also, the record before us does not show the inconvenience for the Governor or his designee in tracking the permitting process is so burdensome that this court should rewrite the statute to eliminate the purported burden. For example, after receiving an application for appeal, the Governor or his designee could request each state agency to send a copy of its determination of whether or not to issue a permit required by the project at the same time the proponent is notified.

The argument by the County and S-K that there must be a definite period of time for resubmitting the application after all the permits are obtained is

---

[7] As observed by the trial judge (the Honorable Roger D. Randall), "Once the appeal is submitted and is complete on its face, it is up to the Governor or his/her designee to schedule a hearing when the state permitting process has been completed."

[8] The trial judge stated, "Nothing in the statute requires resubmission of an appeal accepted as timely filed, nor does the statute, or any administrative regulation to which the court's attention has been called, authorize [Cal-]EPA to set a different procedure for the handling of timely filed appeals except as described in the statute."

[9] We do not address whether Cal-EPA could, pursuant to the Administrative Procedure Act, adopt a regulation requiring an interested person to notify Cal-EPA that the project that is the subject of the appeal had obtained its last required state agency permit or whether any time limit imposed upon such a notification requirement would be jurisdictional.

rejected because it is based on the faulty premise that resubmission is required. With respect to the concern that the appeal process could be delayed indefinitely if a deadline is not imposed, a delay will only arise if the Governor or his designee do not perform their obligation of convening a Tanner Board once all of the permits have been obtained. In addition, equitable principles such as laches may result in the interested person's losing the right to a Tanner Board appeal. Consequently, the interested person has an incentive to inform the Governor or his designee of the completion of the permitting process in the event it is overlooked.

In the present case, the County and S-K have not shown any prejudice resulting from the lapse of time from June 1, 1999, through July 23, 1999. During that time, Padres pursued on appeal of the ATC issued by the air pollution control district. After that appeal was denied on July 14, 1999, Padres notified Cal-EPA and the Governor's office that all required permits had been obtained by the project. As a result of the appeal of the ATC, the County and S-K were aware that Padres had not given up its fight against the expansion of the hazardous waste facility. Accordingly, principles of equity do not bar Padres from pursuing the administrative appeal.

As an alternative application of the Tanner Act to the facts of this case, the County and S-K argue that (1) the application for appeal was, in effect or impliedly, "returned" in accordance with section 25199.10, subdivision (a) to Padres for completion and resubmission and (2) the 20-day statute of limitations applicable to the resubmission was tolled by Cal-EPA's January 17, 1995, letter until the last state agency permit was issued. This argument fails because it too relies on an inappropriate definition of "incomplete." Moreover, it is contrary to the facts of this case and the ordinary meaning of the word "return." It is undisputed that the application for appeal was not physically delivered back to Padres and that Cal-EPA's January 17, 1995, letter explicitly stated, "We will retain your appeal as having been timely filed." Thus, we cannot find the letter was an *effective* return of the application for appeal to Padres when both the actions and the words of Cal-EPA clearly indicated the application for appeal was retained rather than returned.

C. *Padres Did Not Waive Its Ability to Challenge Cal-EPA's Extrastatutory Procedure*

The County and S-K contend that Padres's reaction to Cal-EPA's ambiguous January 17, 1995, letter failed to preserve Padres's right to subsequently challenge the deadline imposed on Padres's resubmission of its application for appeal or Cal-EPA's determination that Padres's January 9, 1995, application for an appeal was "incomplete."

**(3)** Waiver is the intentional relinquishment of a known right by a party with full knowledge of the facts. (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1051 [68 Cal.Rptr.2d 758, 946 P.2d 427], abrogated with regard to its construction of the Permit Streamlining Act.) **(1c)** That standard was not met in this case.

There is no direct evidence that Padres intended to give up its statutory rights or intended to be subject to extrastatutory procedures. Furthermore, the County and S-K have failed to show that Padres had full knowledge of how Cal-EPA and the Governor's Office would later interpret and apply Cal-EPA's January 17, 1995, letter. The letter is ambiguous and does not state that Padres's timely filed appeal will be rejected if it is not "resubmitted" within a specified amount of time after the last state agency permit is obtained by the project. Padres could have reasonably inferred from the ambiguous letter that the resubmission requested by Cal-EPA was not a formal resubmission contemplated by section 25199.9, subdivision (a), and thus, was not subject to the 20 calendar days's resubmission period specified in the statute. One of the reasons Padres could have made this inference is the application for appeal was not returned, which is mandated by the statute for "incomplete" applications.

Accordingly, we hold that Padres did not waive its right to argue that Cal-EPA misinterpreted and misapplied the Tanner Act to Padres's application for an administrative appeal.

DISPOSITION

The judgment is affirmed. Costs awarded to respondents.

Buckley, J., and Levy, J., concurred.