[No. F042715. Fifth Dist. May 28, 2004.]

DAVID MARTINEZ et al., Plaintiffs and Appellants, v.
ENTERPRISE RENT-A-CAR COMPANY et al., Defendants and
Respondents.

48

**COUNSEL**

Cotchett, Pitre, Simon & McCarthy, Niall P. McCarthy, Laura Schlichtmann, Richard A. Dana; William M. Krieg & Associates and William M. Krieg for Plaintiffs and Appellants.

Folger Levin & Kahn, Michael A. Kahn, Margaret E. Murray, Dominique R. Shelton and Eric M. Lode for Defendants and Respondents.

Latham & Watkins, Christopher L. Byers and Charles S. Treat for Thrifty Rent-A-Car System, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

Gibson, Dunn & Crutcher, Gail E. Lees, Austin V. Schwing and Darren Lisitza for Avis Rent A Car System, Inc., and Budget Rent A Car System, Inc., as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**LEVY, J.—**■ Under California law, a dealer cannot sell a new or used vehicle that is not in compliance with the Vehicle Code. However, a dealer-to-dealer sale is exempt from this requirement. At issue is whether this exemption applies to an alleged title defect.

Appellants, David and Gloria Martinez, claimed in their class action that respondent, Enterprise Leasing Company West, violated the law when it did not obtain a total-loss salvage certificate for a damaged rental car before selling that car to another dealer. However, the trial court disagreed. The court concluded that the dealer-to-dealer exemption applied and therefore Enterprise Leasing Company West could not be held liable to appellants for any failure to comply with the Vehicle Code. The court further opined that the subject car did not qualify as a total-loss salvage vehicle in any event.

This appeal challenges the trial court's statutory construction. As discussed below, the trial court was correct. The dealer-to-dealer exemption applies to all Vehicle Code requirements. Further, a vehicle is not a total-loss salvage vehicle unless, based on an objective standard, the cost of repairs exceeds the vehicle's predamage retail value. Accordingly, the judgment will be affirmed.

## BACKGROUND

Respondent, Enterprise Leasing Company West (ELCW), was in the car rental business. In January 2000, a Pontiac Grand Am owned by ELCW was involved in an accident and sustained front-end damage. At that time, the Kelley Blue Book wholesale value of this 2000 Grand Am was $13,800 and its retail value was $16,240. ELCW obtained a repair estimate of $7,542 from an independent automobile body shop.

Enterprise Rent-A-Car Company (ERACC), a Missouri corporation, was the parent company of ELCW. ERACC set corporate guidelines regarding

damaged rental cars. These guidelines provided that any vehicle damaged in the amount of 80 percent or more of its wholesale value would be considered a salvage vehicle. Any vehicle that had damage equaling 40 percent to 79 percent of its wholesale value would be pulled from service and sold in its damaged condition unless a general manager approved its repair. ELCW's practice with respect to damaged vehicles followed these guidelines.

In February 2000, ELCW sold the 2000 Pontiac Grand Am to Ansaldi Auto Sales (Ansaldi), "as is" with clean title, through an auction conducted by Copart, Inc. At the time of the sale, both ELCW and Ansaldi were licensed automobile dealers.

In July 2000, appellants purchased the Grand Am through a newspaper ad from Ansaldi's owner, Carlos Ansaldi, for $12,700. Mr. Ansaldi told appellants the car had never been in an accident and offered its clean title as proof.

Within a few days of their purchase, appellants discovered that the Grand Am had sustained serious front-end damage and had been improperly repaired. A Pontiac dealer advised appellants that it would be too expensive to repair the car properly and that the car was unsafe to drive. Appellants tried to return the car for a refund but Mr. Ansaldi refused.

Appellants filed a class action for unfair business practices and fraud against ERACC, ELCW, and Copart. This action was based on appellants' claim that it was unlawful to sell the Grand Am without first obtaining a salvage title for the car. Thereafter, appellants brought three other Enterprise subsidiaries into the lawsuit, Enterprise Rent-A-Car Company of Los Angeles (ERACC-LA), Enterprise Rent-A-Car Company of Sacramento (ERACC-SAC), and Enterprise Rent-A-Car Company of San Francisco (ERACC-SF). According to appellants, these entities were involved in the conspiracy to commit a fraud on the public.

The trial court granted summary judgment in favor of ERACC and ELCW. The court found that ERACC had no direct involvement whatsoever in the sale of the subject vehicle to appellants and consequently there was no basis upon which to hold it liable for the alleged wrongful acts or omissions of ELCW. The court expressed its view that the Grand Am was not a "total loss salvage vehicle" under Vehicle Code section 544 because the cost of repairs did not exceed the predamage retail value. With respect to ELCW, the court concluded that under the dealer-to-dealer sale exemption contained in Vehicle Code[1] section 24007, subdivision (a)(1), ELCW had no legal obligation to obtain a salvage certificate even if the Grand Am had qualified as a total loss

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

salvage vehicle. Accordingly, the court found there was no basis upon which to find ELCW liable.

Thereafter, the trial court sustained the demurrers filed by ERACC-LA, ERACC-SAC, and ERACC-SF. Appellants conceded that these entities did not own the subject vehicle and that appellants had no direct dealings with them. Consequently, appellants could not maintain a class action against these entities. The court further concluded that appellants did not sufficiently allege a conspiracy to commit a fraud on the public.

## DISCUSSION

1. *Standard of review.*

■ The trial court's interpretation of two Vehicle Code sections, 24007, subdivision (a)(1), and 544, compelled the grant of summary judgment. On appeal, this statutory construction is reviewed de novo. (*Padres Hacia Una Vida Mejor v. Davis* (2002) 96 Cal.App.4th 1123, 1130 [117 Cal.Rptr.2d 727].)

When a statute is clear and unambiguous, there is no need to construe its meaning. However, where the provisions are ambiguous or conflict, the court must engage in statutory construction. (*Santa Ana Unified School Dist. v. Orange County Development Agency* (2001) 90 Cal.App.4th 404, 408 [108 Cal.Rptr. 2d 770].)

■ In construing a statute, the court's fundamental task is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064 [77 Cal.Rptr.2d 202, 959 P.2d 360].) To begin, the court examines the language of the statute, giving the words their usual, ordinary, and commonsense meaning. (*California Teachers Assn. v. Governing Bd. of Hilmar Unified School Dist.* (2002) 95 Cal.App.4th 183, 191 [115 Cal.Rptr.2d 323].) Nevertheless, the language should not be given a literal meaning if doing so would result in absurd consequences. (*Calatayud v. State of California, supra,* 18 Cal.4th at pp. 1064–1065.) Moreover, a statute cannot be construed in isolation, but rather must be read " ' "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Id.* at p. 1065.)

■ The trial court's decision to grant summary judgment is also reviewed de novo. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) This court must independently identify the issues framed by the pleadings, determine whether the moving party has negated the

opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue. (*Ibid.*) Thus, appellate review focuses on the trial court's ruling, not its rationale. (*Ibid.*)

■  Similarly, de novo review is required for the trial court's order sustaining the demurrers filed by the Los Angeles, Sacramento, and San Francisco Enterprise subsidiaries. This court must exercise its independent judgment to determine whether, as a matter of law, the complaint states a cause of action against these defendants. (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1132, 1134 [113 Cal.Rptr.2d 690].)

*2. Summary judgment was properly granted in favor of ELCW.*

■  Section 11515, subdivision (e), requires the owner of a "total loss salvage vehicle" to obtain a properly endorsed "salvage certificate" before selling the vehicle. The crux of appellants' lawsuit is the allegation that ELCW violated this section when it sold the Grand Am to Ansaldi with "clean," as opposed to "salvage," title. Appellants' underlying premise is that the Grand Am was a "total loss salvage vehicle." Thus, it is appropriate to discuss the concept at this juncture.[2]

Section 544, subdivision (a), defines "total loss salvage vehicle" as: "A vehicle, other than a nonrepairable vehicle, of a type subject to registration that has been wrecked, destroyed, or damaged, to the extent that the owner, leasing company, financial institution, or the insurance company that insured or is responsible for repair of the vehicle, considers it uneconomical to repair the vehicle and because of this, the vehicle is not repaired by or for the person who owned the vehicle at the time of the event resulting in damage."

Accordingly, the Grand Am would qualify as a "total loss salvage vehicle" under this section only if it was not repaired for ELCW because ELCW considered it uneconomical to do so. Thus, the critical terms are "total loss," "uneconomical to repair," and "considers." In construing this statute, these terms must be given their usual, ordinary, and commonsense meanings.

---

[2] Our learned colleague's assertion in her concurrence that a portion of the majority opinion is dicta is based on an incomplete understanding of this litigation. An analysis of whether the Grand Am qualified as a "total loss salvage vehicle" under section 544 is required to decide all issues in this matter. While the summary judgment granted in favor of ELCW can be affirmed based on section 24007 alone, that is not true with respect to the summary judgment granted in favor of ERACC. A judicial construction of section 544 is necessary to resolve appellants' claim that ERACC's salvage policy violates California law. (See pt. 3, *post.*)

The Legislature's use of the term "total loss salvage vehicle" as opposed to simply "salvage vehicle" is significant. "Total loss" is commonly used to mean a "complete destruction" of the property at issue. (Cf. Black's Law Dict. (7th ed. 1999) defining "total loss" as "[t]he complete destruction of insured property so that nothing of value remains . . .")[3] Moreover, legal treatises are consistent in defining a vehicle as a "total loss" where the cost of repairs exceeds the vehicle's precollision fair market value. (Couch on Insurance (3d ed.) § 177:16; 7A Am.Jur.2d (1997) Automobile Insurance, § 409, p. 201; 46 C.J.S., Insurance, § 1231, p. 676.)

When the term "uneconomical to repair" is given its ordinary meaning, it is in line with the above definition of "total loss." The dictionary definition of "uneconomical" is "costly, wasteful." (Webster's 3d New Internat. Dict. (1986) p. 2493.) Thus, the interpretation of section 544 requires a determination of when it would be "wasteful" to repair a damaged vehicle. Clearly, where a vehicle's undamaged fair market value is lower than the cost of repairs, it would be wasteful to repair it. A comparable vehicle could be purchased for less money. However, if it costs less to repair the vehicle than to purchase another comparable one, it would be wasteful not to repair it. Logically, a vehicle is "uneconomical to repair" when the cost of repairs exceeds the vehicle's undamaged fair market value.

However, section 544 also contains language that can be construed as adding a subjective component to the definition of "total loss salvage vehicle." To qualify as a "total loss salvage vehicle," the vehicle must be damaged to the extent that "the owner . . . *considers* it uneconomical to repair . . . ." (Italics added.) Based on the use of "considers," appellants assert that the statute leaves the definition of "uneconomical to repair" up to the owner. In other words, the "total loss salvage vehicle" determination is totally subjective.

In response, ELCW and amici curiae argue that appellants have confused two different issues, i.e., who determines whether the vehicle is a total loss versus how that determination is made. They note that the use of the phrase "the owner . . . considers it" makes it clear that the owner, as opposed to the buyer or some other third party, must determine whether the vehicle is "uneconomical to repair." However, this decision must be made based on objective, rational criteria. Thus, it would be up to the owner to determine what the predamage "book value" of the vehicle was and to obtain repair estimates. From this readily ascertainable information, the owner could

---

[3] In interpreting a statute, it is appropriate to use a dictionary to determine the usual and ordinary meaning of a word or phrase. (*E.W. Bliss Co. v. Superior Court* (1989) 210 Cal.App.3d 1254, 1258, fn. 2 [258 Cal.Rptr. 783].)

determine whether the cost to repair the vehicle exceeds its undamaged value and therefore is "uneconomical to repair."

■ ELCW and amici curiae are correct. The reasonable interpretation of section 544 requires that "total loss salvage vehicle" status be objectively determined. Otherwise, the label is meaningless. "Uneconomical to repair" decisions based on individual considerations would necessarily be inconsistent and therefore provide limited information. Such a result does not conform with the object of this statutory scheme, i.e., consumer protection.

The Michigan Court of Appeals reached the same conclusion when interpreting nearly identical language in *Royal Auto Parts v. State* (1982) 118 Mich.App. 284 [324 N.W.2d 607]. Where, as here, there is no California case directly on point, foreign decisions involving similar statutes and similar factual situations are of great value to the California courts. (*Estate of Salisbury* (1978) 76 Cal.App.3d 635, 642 [143 Cal.Rptr. 81].)

In *Royal Auto Parts*, the statute at issue provided that a vehicle was "distressed" and required a salvage certificate when it had been damaged to an extent that " 'the owner . . . considers it uneconomical to repair the vehicle . . . .' " (*Royal Auto Parts v. State, supra,* 324 N.W.2d at p. 609.) The court concluded that a vehicle met this definition when "it would be too costly to repair, *i.e.,* the cost of repairs exceeds the predamage fair market value of the vehicle." (*Id.* at p. 610.) The court further found that individual considerations could not be taken into account in deciding whether a vehicle was "uneconomical to repair." Rather, since "uneconomical" refers only to monetary considerations, the statutory language provided an objective standard. (*Ibid.*)

■ Further, defining a "total loss salvage vehicle" under section 544 as one where the cost of repairs exceeds the vehicle's predamage fair market value is consistent with section 4453. That section sets forth the information required on a vehicle registration card. Certain vehicles must be specifically identified, including "[a] motor vehicle rebuilt and restored to operation that was previously declared to be a total loss salvage vehicle *because the cost of repairs exceeds the retail value of the vehicle.*" (§ 4453, subd. (b)(1), italics added.)

Appellants contend that section 4453 creates a special subset of the general, broader class of "total loss salvage vehicles" defined by section 544. According to appellants, this more specific class should be confined to section 4453 and its particular purpose of identifying certain types of vehicles on registration cards. Thus, appellants' interpretation separates "total loss salvage vehicles" into two classes, those that the owners subjectively decide are

uneconomical to repair and those that are damaged to the extent that the repair costs exceed the retail value but are thereafter rebuilt and restored.

■ However, appellants' position violates basic rules of statutory interpretation. Appellants are attempting to read section 544 in isolation rather than with reference to the entire statutory scheme. This leads to the untenable result of a single term being defined in two different ways. Such an interpretation is contrary to the established presumption that "the Legislature did not intend to act inconsistently on the same subject." (*Jacobs v. State Bd. of Optometry* (1978) 81 Cal.App.3d 1022, 1031 [147 Cal.Rptr. 225].) Accordingly, it must be concluded that section 4453's description of a "total loss salvage vehicle" does not create a separate class of such vehicles but, rather, helps to clarify the meaning of that term under California law.

■ In sum, a "total loss salvage vehicle" as defined by section 544 is one where the cost of repairs exceeds its predamage retail value, i.e., it is "uneconomical to repair." Moreover, whether the vehicle qualifies as such is established by objective standards. The retail value can be obtained from a widely accepted source such as the Kelley Blue Book. Cost of repairs can be ascertained through estimates from qualified mechanics.

In this case, however, an additional factor is present, i.e., two dealers were involved in the chain of sale. Generally, a dealer cannot legally sell a vehicle unless that vehicle complies with all Vehicle Code requirements. (§ 24007.) Thus, if a dealer were to sell a "total loss salvage vehicle" to a consumer for highway use without first obtaining a "salvage certificate" as required by section 11515, that dealer would be in violation of section 24007. Nevertheless, there is an exception when the sale is to another dealer. Section 24007, subdivision (a)(1), provides: "No dealer or person holding a retail seller's permit shall sell a new or used vehicle which is not in compliance with this code and departmental regulations adopted pursuant to this code, *unless the vehicle is sold to another dealer,* sold for the purpose of being legally wrecked or dismantled, or sold exclusively for off-highway use." (Italics added.)

■ The rationale behind exempting dealer-to-dealer sales in this manner is that such transactions involve no danger to the consuming public. (*Fruehauf Corp. v. Lakeside Chevrolet Co.* (1981) 117 Cal.App.3d 783, 786 [173 Cal.Rptr. 55].) Under section 24007, the purchasing dealer is required to bring the vehicle into compliance with the Vehicle Code before selling it to a consumer. (117 Cal.App.3d at p. 786.) Consequently, when a vehicle is sold to a dealer, all liability to the consuming public is shifted from that seller to that buying dealer. (*Id.* at p. 788.)

Here, it is undisputed that both ELCW and Ansaldi were licensed California automobile dealers. Based on the subject transaction being a dealer-to-dealer sale, the trial court concluded "ELCW had no legal obligation to obtain a salvage certificate for the subject vehicle, even if it qualified as a 'total loss salvage vehicle' under Veh. Code § 544." Since the claims against ELCW were based entirely on the allegation that ELCW failed to obtain a salvage certificate before selling the car to Ansaldi, the court found that ELCW could not be held liable to appellants. Accordingly, the trial court granted summary judgment in ELCW's favor.

Appellants contend that this dealer-to-dealer exemption should be limited to equipment requirements. To support their position, appellants point to the history of section 24007 and its placement in the Vehicle Code. Appellants further note that, to date, no case has applied this exemption to title disclosures.

Before the 1965 amendment, section 24007 provided: "No dealer shall sell a new or used motor vehicle without first testing and, if necessary, adjusting the lights and brakes on the vehicle to conform with this code and department regulations adopted pursuant to this code unless the vehicle is sold for the purpose of being wrecked or dismantled." (Stats. 1959, ch. 3, § 2, p. 1714.)

Thus, by its terms, this prior version of section 24007 applied only to certain vehicle equipment, i.e., lights and brakes. Hence, its position in division 12, Equipment of Vehicles, is logical.

In 1965 the application of section 24007 was expanded. The amendment prohibited a dealer from selling a new or used motor vehicle that did not comply with *"the provisions of this code."* (Stats. 1965, ch. 2033, § 1, p. 4618.) At that time, the dealer-to-dealer exemption was also added.

Despite the use of the term "this code," appellants argue the current version of section 24007 should be interpreted to mandate compliance with equipment requirements only. However, there is no justification for doing so. "This code" is clear and unambiguous. The ordinary and commonsense interpretation of section 24007 is that a motor vehicle must comply with the entire Vehicle Code, not just selected provisions, before a dealer can legally sell that vehicle. It would have been a simple matter for the Legislature to expressly limit section 24007 to equipment if that had been its intent.

To support their position that the dealer-to-dealer exemption does not apply to claims concerning title, appellants rely on *Varwig v. Anderson-Behel Porsche/Audi, Inc.* (1977) 74 Cal.App.3d 578 [141 Cal.Rptr. 539]. However, *Varwig* has no bearing on this case. There, the plaintiff claimed the defendant motor vehicle dealer was liable for deceit in the misrepresentation of title. No Vehicle Code violation was alleged. Accordingly, section 24007 was not even mentioned. "An opinion is not authority for a point not raised, considered, or resolved therein." (*Styne v. Stevens* (2001) 26 Cal.4th 42, 57 [109 Cal.Rptr.2d 14, 26 P.3d 343].)

Moreover, the fact that the current section 24007 has not been applied to an alleged Vehicle Code title violation in a published opinion is inconsequential. The issue must be presented to a court before it can be evaluated. Until now, that has not occurred.

■ In sum, the section 24007 dealer-to-dealer sale exemption shifts liability for any Vehicle Code requirement to the dealer who sells the vehicle to the ultimate consumer. Consequently, ELCW cannot be held liable to appellants for alleged Vehicle Code violations regarding title. ELCW sold the Grand Am to Ansaldi, another dealer, who in turn sold the car to appellants. Accordingly, summary judgment was properly granted in favor of ELCW.

3. *Summary judgment was properly granted in favor of ERACC.*

Appellants contend that their causes of action against ERACC, the parent company of ELCW, should be allowed to go forward because ERACC's salvage policy violates California law. This policy states that a salvage certificate should be obtained if the vehicle's repair estimate exceeds 80 percent of its undamaged wholesale value "unless specified differently by your State laws. Whichever is more conservative should be used."

■ As discussed above, California law requires a salvage certificate when the cost to repair the vehicle exceeds its undamaged retail value. Thus, ERACC's 80 percent policy falls within the parameters of the California statutes. Consequently, there is no basis upon which to hold ERACC liable for unfair business practices or fraud.

4. *The demurrer of the other California Enterprise subsidiaries was properly sustained.*

Appellants argue they adequately pled secondary liability causes of action against the Enterprise subsidiaries, ERACC-LA, ERACC-SAC, and ERACC-SF, and therefore those causes of action should not have been dismissed on demurrer. However, before the demurrer was heard, the trial court concluded

that appellants could not establish primary liability against ELCW and ERACC. As discussed above, the trial court was correct. Since appellants' causes of action against these subsidiaries are dependent on a liability finding against ELCW and ERACC, the demurrer was properly sustained.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Buckley, Acting P. J., concurred.

**WISEMAN, J.,** Concurring.—I concur in the holding that summary judgment was properly granted based on Vehicle Code section 24007. The dealer-to-dealer sale exemption under section 24007 prevented Enterprise Leasing Company West from being held liable to appellants for any failure to comply with the Vehicle Code. As a result, I find section 24007 dispositive on the issue.

In my opinion, the analysis with respect to whether the subject vehicle qualified as a total-loss salvage vehicle under Vehicle Code section 544 is unnecessary to the decision and dictum. In fact, during oral argument, the parties agreed that if we found that section 24007 barred the claims, it would be unnecessary to reach the issue under section 544. "Ordinarily, when an appellate court concludes that affirmance of the judgment is proper on certain grounds it will rest its decision on those grounds and not consider alternative grounds which may be available." (*Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029 [204 Cal.Rptr. 913]; see also *Young v. Three for One Oil Royalties* (1934) 1 Cal.2d 639, 647–648 [36 P.2d 1065] [leaving question that was unnecessary to decision for future proceeding].) I see no reason here to depart from this general rule.

Appellants' petition for review by the Supreme Court was denied August 18, 2004. Chin, J., did not participate therein.